

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 2 7 2007
J.T. NOBLIN, CLERK
_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CAROLYN MONTIFORTE**                                    **PLAINTIFF**

**v.**                                    CIVIL ACTION NO. 1:07cv96726-JMR

**PFIZER, INC., G.D. SEARLE, LLC,**                **Pending Transfer to MDL-1699**
**PHARMACIA CORPORATION**                    **(In re Bextra and Celebrex Marketing,**
**MONSANTO COMPANY,**                         **Sales Practices and Products**
**LANCE ST. AMANT,**                          **Liability Litigation)**
**RITA NOWELL, CHRISTINE RANSOM,**
**MICKEY RUMSEY,**
**and fictitious Defendants**
**A, B, C and D.**                                    **DEFENDANTS**

### NOTICE OF REMOVAL

**TO:**

> Navan Ward, Jr.
> Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
> P.O. Box 4160
> Montgomery, Alabama 36103-4160
>
> ATTORNEYS FOR PLAINTIFF
>
> Leigh D. Vernon
> WATKINS & EAGER PLLC
> 400 East Capitol Street, Suite 300
> Post Office Box 650
> Jackson, Mississippi 39205-0650
>
> ATTORNEYS FOR RITA NOWELL AND MICKEY RUMSEY
>
> Gayle Parker
> P.O. Box 998
> Gulfport, Mississippi 39502
>
> HARRISON COUNTY CIRCUIT CLERK

IN ACCORDANCE WITH 28 U.S.C. §§ 1332, 1441, and 1446, you are hereby notified

that Defendants G.D. Searle LLC ("Searle"), Pharmacia Corporation ("Pharmacia") (f/k/a

Monsanto Company that was organized in 1933) (improperly captioned in Plaintiff's Complaint

as "Monsanto Company"), and Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter

"Pfizer") (collectively, the "Pharmaceutical Defendants") have removed this civil action from the

Circuit Court of Harrison County, Mississippi, to the United States District Court for the

Southern District of Mississippi, Southern Division, and in support thereof state the following:

## I.

## Introduction

**A.      The Multi-District Litigation Proceedings.**

This is a pharmaceutical product liability case in which Plaintiff contends that she

sustained personal injuries from Bextra®, a prescription medication.  The Judicial Panel on

Multidistrict Litigation ("JPML") has coordinated pretrial proceedings in personal injury actions

relating to Bextra® pursuant to 28 U.S.C. § 1407 and assigned the litigation to the Honorable

Charles R. Breyer of the United States District Court for the Northern District of California (the

"MDL Court").  *See In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*, 391 F.

Supp. 2d 1377 (J.P.M.L. 2005) (creating MDL 1699).  This case is expected to transfer to that

court as a "tag-along action."  *See id.* at 1377, n.1; Rules 1.1 & 7.4(a) of Rules for Multidistrict

Litigation Under 28 U.S.C. § 1407, 1999 F.R.D. 425 (J.P.M.L. 2001).  Defendants intend to file

a Motion to Stay all proceedings in this Court pending MDL transfer.

**B.      Plaintiff's Lawsuit.**

On or about June 13, 2007, Plaintiff Carolyn Montiforte filed this personal injury action

in the Circuit Court of Harrison County, Mississippi, Civil Action No. A2401-07-214.  *See*

Compl. ¶ 1 (Exhibit A).  The United States District Court for the Southern District of

Mississippi, Southern Division, had, at the time the suit was filed, and now has, original subject

matter jurisdiction of this civil action because there exists complete diversity of citizenship

between Plaintiff and the properly joined defendants, and the amount in controversy, exclusive

of interest and costs, exceeds the sum of $75,000, as established below. *See* 28 U.S.C. § 1332.

No party properly joined as a defendant in this action is a citizen of the state of Mississippi, the

state in which the action was brought.

Plaintiff contends that the Pharmaceutical Defendants are liable for her alleged injuries

under theories of negligence, strict liability, negligent misrepresentation, fraud, and breach of

express and implied warranty. *See generally* Compl. at 16-31. Plaintiff also names as

defendants four current or former pharmaceutical field representatives (often called detailers)

whom Plaintiff alleges share her Mississippi citizenship.[1] As demonstrated below at § III,

however, these defendants are improperly joined[2] in a failed effort to obstruct the Pharmaceutical

Defendants' statutory right to removal.

In comparable cases, Mississippi federal courts have held that similar allegations against

pharmaceutical companies' individual employees have no reasonable possibility of success. *See,*

*e.g., Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524 (S.D. Miss. 2000) ("the Court finds that

Plaintiffs have no possibility of maintaining a cause of action against the sales representatives in

state court and that they were joined solely for the purpose of avoiding federal jurisdiction");

*Walker v. Medtronic, Inc.*, 2003 WL 21517997, at *4 (N.D. Miss. June 4, 2003) (same).

Indeed, as the Eleventh Circuit Court of Appeals recently observed, it has become a

"common strategy" for plaintiffs in pharmaceutical product liability cases to name local detailers

---

[1] In fact, Christine Ransom Parenton is a resident and citizen of Louisiana, not Mississippi. *See* Affidavit of Christine Ransom Parenton ¶ 1 (attached as Exhibit B).

[2] Courts historically have called this the "fraudulent joinder" doctrine. However, in *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), the Fifth Circuit Court of Appeals adopted the term "improper joinder" as being more consistent with the related statutory language. Accordingly, we use this phraseology in this Notice.

as defendants in an effort to defeat the diverse drug manufacturer's right to remove a case to federal court. *See Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005) (holding detailers were improperly joined). Likewise, a federal MDL court overseeing one such pharmaceutical product liability litigation action characterized such tactics as "a sham, at the unfair expense not only of [the diverse pharmaceutical company] but of the many individuals . . . that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002).

Plaintiff's counsel recently has filed numerous complaints in Alabama courts making similar allegations against Alabama detailers; the Alabama federal courts routinely have upheld the removal of such cases, holding that the detailer defendants were improperly joined (or reserved such issues for consideration after transfer to the Celebrex and Bextra MDL court).[3] Here as well, the improper joinder of detailer defendants does not defeat diversity jurisdiction.

---

[3] *See, e.g., McCluskey v. Merck & Co.*, No. 07-AR-0232-S (N.D. Ala. Mar. 7, 2007) (Acker, J.) (denying plaintiff's motion to remand and granting defendants' motion to stay), *Conner v. G.D. Searle LLC*, No. CV 06-PT-843-E (N.D. Ala. June 1, 2006) (Propst, J.) (same): *Gordon v. Pfizer Inc.*, CV-06-RRA-703-E, 2006 WL 2337002 at *9 (N.D. Ala. May 10, 2006) (Armstrong, Magistrate J.) (denying remand and finding "no reasonable possibility" that the plaintiff would be able to establish a claim against pharmaceutical sales representative and therefore dismissing him with prejudice), *adopted as Opinion of the Court* (N.D. Ala. May 22, 2006) (Johnson, J.) (collected at Exhibit C). Numerous other courts have granted the defendants' motions to stay proceedings pending MDL transfer. *See Dunlap v. Pfizer, Inc.*, No. 7:07-cv-45-HGD (N.D. Ala. Jan. 10, 2007) (Davis, J.) (granting motion to stay pending transfer to the MDL despite plaintiff's joinder of detailer in an effort to defeat diversity jurisdiction); *Morris v. Pfizer Inc.*, No. 2:06-cv-349-MEF (M.D. Ala. May 26, 2006) (Fuller, J.) (denying plaintiff's motion to expedite ruling on motion to remand, whereupon the case transferred to the MDL court); *Jackson v. Pfizer, Inc.*, CV-2:05-cv-841-F (M.D. Ala. Dec. 5, 2005) (Walker, J.) (granting motion to stay pending transfer to the MDL despite plaintiff's joinder of detailers in an effort to defeat diversity jurisdiction); *Nelson v. Pfizer, Inc.*, CV-2:05-cv-832-F (M.D. Ala. Oct. 20, 2005) (Fuller, J.) (same); *Thomas v. Pfizer, Inc.*, CV-2:05-cv-824-F (M.D. Ala. Nov. 15, 2005) (Fuller, J.) (same); *McGrady v. Pfizer, Inc.*, CV-2:06-cv-431-MEF (M.D. Ala. May 23, 2006) (Fuller, J.) (same); *Hall v. Pfizer, Inc.*, CV-2:05-cv-941-F (M.D. Ala. Nov. 21, 2005) (McPherson, J.) (same); *Beverly v. Pfizer, Inc.*, CV-05-0542-M (S.D. Ala. Nov. 17, 2005) (Milling, J.) (same) (collected at Exhibit D).

# II.

## Diversity of Citizenship Exists Between Plaintiff and the Properly Joined Defendants

There is complete diversity between Plaintiff and the properly joined defendants.

Plaintiff alleges that she is an adult resident of Mississippi and, upon information and belief, she is, and was at all relevant times, a resident and citizen of Mississippi. *See* Compl. ¶¶ 2, 3.

Defendant Pfizer is now, and was at the time of filing of Plaintiff's Complaint, a Delaware corporation with its principal place of business in New York, and thus is a citizen of Delaware and New York. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."); Compl. ¶ 4 (stating that Pfizer is a Delaware corporation, but alleging for reasons of unknown relevance that "Pfizer is licensed and registered to do business in *Illinois*") (emphasis added).

Defendant Pharmacia (also improperly captioned in Plaintiff's Complaint as "Monsanto Company")[4] is now, and was at the time of filing of Plaintiff's Complaint, a Delaware corporation with its principal place of business in New Jersey, and thus is a citizen of Delaware and New Jersey. *See* Compl. ¶ 6; 28 U.S.C. § 1332(c)(1).

---

[4] In 1933, an entity known as Monsanto Company was incorporated under the laws of Delaware. On March 31, 2000, a subsidiary of 1933 Monsanto Company merged with Pharmacia & Upjohn, Inc., and Monsanto Company changed its name to Pharmacia Corporation. Pharmacia is, and at the time of filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey and, thus, for jurisdictional purposes, is a citizen of Delaware and New Jersey. 28 U.S.C. § 1332(c)(1). *Cf.* Compl. ¶ 7 (asserting Monsanto is the "parent" of Pharmacia, but in all events acknowledging that Monsanto is a Delaware corporation). There also is a current agricultural entity known as Monsanto Company, a corporation existing under the laws of Delaware and having its principal place of business in Missouri (and therefore a citizen of those two states). The present Monsanto Company is not involved, and has never been involved, in the development, sale, marketing or any other aspect of Bextra® and therefore has no bearing on this suit. In any event, it is diverse to Plaintiff.

Defendant Searle is now, and was at the time of filing of Plaintiff's Complaint, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia Corporation which is, and at the time of the filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey. Thus, for jurisdictional purposes, Searle is a citizen of Delaware and New Jersey. *See, e.g., Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993) ("an unincorporated association is considered to have the citizenship of its members"); *Blanchard v. Wal-Mart Stores, Texas, LP*, 368 F. Supp. 2d 621, 624 (E.D. Tex. 2005) (holding that citizenship of a LLCs determined by looking at the citizenship of its members).

The Complaint also names as defendants individual pharmaceutical representatives Lance St. Amant, Rita Nowell, Christine Ransom, and Mickey Rumsey (hereinafter the "Detailer Defendants"), and alleges that each is a resident of Mississippi. In fact, Christine Ransom (Parenton) is a resident and citizen of Louisiana. *See* Ransom Parenton Decl. ¶ 1. Even assuming *arguendo* that one or more of the Detailer Defendants is a Mississippi citizen, however, their presence does not destroy this Court's diversity jurisdiction because, as shown below in § III, the Detailer Defendants are improperly joined in an attempt to defeat diversity and prevent removal. As such, their citizenship is disregarded in determining whether diversity jurisdiction exists. *See, e.g., Heritage Bank v. Redcom Labs, Inc.*, 250 F.3d 319, 323 (5th Cir. 2001).

Plaintiff does not allege the citizenship of the fictitious Defendants A, B, C and D. In any event, the citizenship of the fictitious Defendants "shall be disregarded" for purposes of removal. 28 U.S.C. § 1441(a).

Accordingly, because Plaintiff is a Mississippi citizen and because none of the properly joined defendants is a citizen of Mississippi, complete diversity exists between Plaintiff and the properly joined defendants.

## III.

### The Detailer Defendants Are Improperly Joined

### A.     The Improper Joinder Standard

The improper joinder doctrine prevents plaintiffs from defeating diversity jurisdiction simply by naming a defendant who shares a plaintiff's State citizenship. *See* 28 U.S.C. § 1441(b) (providing for removal jurisdiction in diversity cases "if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought") (emphasis added); *see generally Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("The Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right.").[5] Improper joinder is established by, *inter alia*, the "'inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *accord Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005). Removal is appropriate and the citizenship of a non-diverse defendant is disregarded where "there is no

---

[5] *See, e.g., Legg*, 428 F.3d at 1320 (recognizing "common strategy" in pharmaceutical product liability actions of naming non-diverse local defendants against whom there is no legitimate claim in an effort to defeat pharmaceutical company's removal rights); *see also McKinney v. Bd. Of Md. Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992) ("Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.").

reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Under this standard, the Fifth Circuit has emphasized that "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). Instead, there must be a "*reasonable* basis" for predicting that the plaintiff might establish the non-diverse defendant's liability on the pleaded claims to warrant remand. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (emphasis added).

Applying these principles to Plaintiff's complaint, there is no reasonable possibility that Plaintiff can prevail against the Detailer Defendants because (i) Plaintiff's boilerplate allegations lack the requisite factual basis and specificity and (ii) Plaintiff's claims fail as a matter of law.

**B.    Plaintiff's Conclusory Allegations Are Insufficient To Defeat Removal.**

Plaintiff's conclusory allegations against the Detailer Defendants are insufficient to state a claim against them. As the Fifth Circuit has long recognized, "pleadings matter when fraudulent joinder . . . issues are decided." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002). Whether removal to federal court is appropriate is determined "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). The Supreme Court recently emphasized that ordinary pleading rules "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) (addressing Fed. R. Civ. P. 8); *see* Miss. R. Civ. P. 8. Thus, a plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965.

In keeping with these principles, "[c]onclusory allegations, wholly lacking in specific factual support" are insufficient to defeat an improper joinder removal. *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 817 (5th Cir. 1993); *see also Great Plains Trust Co.*, 313 F.3d at 313 (stating that Fifth Circuit, in undertaking an improper joinder inquiry, "will not . . . 'accept as true conclusory allegations or unwarranted deductions of fact.'") (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). Put another way, the "[f]ailure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (citing *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993)); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 732-33 (S.D. Miss. 1999) (concluding non-diverse defendant was improperly joined where plaintiff failed to allege any factual basis for claim of liability).[6]

Notwithstanding these well-established standards, the Complaint fails to allege *any* facts supporting a claim against the Detailer Defendants. Aside from listing the name and supposed address of each detailer, the Complaint's *sole mention* of the Detailer Defendants consists of the following boilerplate, conclusory statements, which are functionally identical as to each detailer:

> [The detailer] at all times material hereto was a sales representative for Pfizer
> Defendants and was acting within the coarse [*sic*] and scope of their [*sic*]
> employment with the Pfizer Defendant's [*sic*]. Upon information and belief,

---

[6] These standards are further heightened with respect to allegations of fraud. *See* Fed. R. Civ. P. 9(b) (requiring averments of fraud to be pled with particularity); Miss. R. Civ. P. 9(b) (same); *Brabham v. Brabham*, 483 So. 2d 341, 342 (Miss. 1986) ("In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated.").

Defendant . . . was in the business of marketing[,] selling and distributing Bextra. [*E.g.*, Compl. ¶ 8.]

The Removing Defendants [*sic*] and Sales Representative Defendants made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra. [*Id.* ¶ 105.]

The Removing Defendants [*sic*] through their detail sales representatives, including Sales Representative Defendants, made representations of the safety and efficacy of their product, Bextra. [*Id.* ¶ 106.]

Bextra does not conform to the express representations made by Sales Representative Defendants. [*Id.* ¶ 108.]

Plaintiff does not identify *a single doctor* whom the detailers purportedly misled (let alone Plaintiff's doctor), much less identify *where or when* such misrepresentations took place, the specific content of the representations, or how any such statements bear any causal relationship to the Plaintiff's own alleged injury.[7] Absent specific allegations tying the Detailer Defendants to Plaintiff's claims, there is no reasonable basis to predict that Plaintiff could recover against them under Mississippi law. The remainder of the Complaint refers merely to "Defendants" generically, without pleading any factual support for any claim against any individual employee.[8]

---

[7] Although the Complaint fails to allege the dates, if any, of any act or omission of the Detailer Defendants, to the extent Plaintiff's claims are barred by the applicable statute of limitations, this would provide another basis for improper joinder.

[8] In any event, these kinds of general allegations against "Defendants," without alleging any actionable facts specific to Detailer Defendants, do not state a claim sufficient to defeat diversity jurisdiction. *See, e.g.*, *Bell Atlantic*, 127 S. Ct. at 1964-65 (holding that a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level"); *Griggs*, 181 F.3d at 699 (affirming decision denying remand where state-court complaint did not allege actionable facts specific to non-diverse defendant). Plaintiff does not specifically allege that any individual detailer ever called upon or communicated with her or with her prescribing physician. This is an essential element of her causation case—the alleged acts of the employees must have caused or contributed to Plaintiff having taken the drug. As set forth below, the Detailer Defendants' declarations have negated that they ever communicated with Plaintiff. Thus, if she is to establish causation, Plaintiff must show that the individual Detailer Defendants caused her doctor to prescribe the drug, a necessary element of causation that she does not even allege. Nor does she allege that the prescribing physician relied on any representations

These allegations are insufficient as a matter of law.  For example, where a plaintiff "simply allege[s] in very general terms" misconduct by employing "boilerplate language that collectively implicates Defendants as a group," and fails to "identify with the requisite particularity the date, time, place or content of [defendant's] alleged false representations," Plaintiff has failed to state a fraud-based claim.  *Walker*, 2003 WL 21517997, *4 (applying law of Mississippi, finding improper joinder of detailer); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286 (S.D.N.Y. 2001) ("[Plaintiffs] have peppered their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants.'  Such general allegations do not meet the Rule 9(b) requirements.  If sustained, they would undermine the rule's intent 'to provide a defendant with fair notice of a plaintiff's claim, [and] to safeguard a defendant's reputation from improvident charges of wrongdoing.'") (applying Mississippi law) (citations omitted).

Plaintiff's pleading failures are manifest.  First, Plaintiff has failed to allege an essential element of her product liability and breach of warranty claims against the Detailer Defendants: proximate causation.  It is axiomatic that "[t]he injury complained of must be a proximate consequence of the alleged breach of duty."  *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 282 (applying Mississippi law).  But Plaintiff does not even identify her prescribing physician, much less allege that the Detailer Defendants' alleged failure to warn such physician proximately caused her purported injuries or that Plaintiff's physician relied upon the detailer's alleged statements.  *See, e.g.*, Compl. ¶¶ 98-102 (arguing only generically that "[a]s a direct, legal, proximate and producing result of Defendant's [*sic*] failure to warn, [plaintiff] sustained harm" [¶ 100], and that "Defendants had a continuing duty to warn the medical, pharmaceutical and/or

---

from the named detailers when making his or her decision to prescribe the drug.  Indeed, Plaintiff does not even *identify* her doctor.

scientific communities, and users and/or consumers of the drug, including Plaintiff" [¶ 99]).

Thus, where "plaintiffs do not allege that the defendant sales representatives failed to warn the

particular physicians who prescribed the drug for them, let alone that this alleged failure was the

proximate cause of their injuries," such failure is necessarily "fatal to their claims." *In re Rezulin*

*Prods. Liab. Litig.*, 133 F. Supp. 2d at 282. Further, there is no allegation here that the Detailer

Defendants supplied the actual Bextra® that Plaintiff consumed, and thus there is not the

connection between the parties that is required to state a claim for breach of warranty and other

product liability causes of action. *See id.* at 286 n.45 ("Without alleging that the sales

representatives supplied the [drug] that plaintiffs eventually bought, there is no allegation that the

sales representatives supplied 'the defective product in question.'"). Accordingly, Plaintiff's

product liability and breach of warranty claims against the Detailer Defendants fail for these

reasons as well.

Second, any negligent misrepresentation or fraud claim fails for an additional reason. To

recover for negligent misrepresentation, a plaintiff actually must have received and relied upon

the alleged misrepresentation. *See Arnona v. Smith*, 749 So. 2d 63, 67 (Miss. 1999); *see also*

*Great Plains Trust Co.*, 313 F.3d at 322 (claim for fraud requires that the defendant intend that

the plaintiff receive and rely upon the allegedly false communication). Plaintiff has not alleged

that the Detailer Defendants made any representations regarding Bextra® directly to her, and the

Detailers' declarations confirm that they did not. *Compare, e.g.*, Compl. ¶ 105 (alleging that the

"Sales Representatives Defendants made express representations to the consuming public at

large") *with, e.g.*, St. Amant Decl. ¶¶ 9-10 (Exhibit B) (detailer never made presentations to the

"general public" or to Plaintiff in particular). Nor has Plaintiff even alleged that the detailers

made any alleged misrepresentations to her prescribing doctor that the doctor passed along to

her. But Plaintiff could not recover from the detailers as an "indirect recipient" of a misrepresentation in any event. "[P]laintiff[] must allege that a misrepresentation was made to [her], as opposed to others, and that [she] relied on it. Plaintiff[] here fail[s] to allege that defendants made any representations to [her]. Rather, they allege that defendants misrepresented the risks of [the drug] 'to the public . . . .' These conclusory statements are insufficient to meet the required nexus between the plaintiffs and the defendants' alleged misrepresentations." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 285-86. Plaintiff has not alleged (and cannot seriously contend) that the detailers were aware of her specific identity, much less that they made representations to her physician with the specific intent that they be repeated to, and relied upon, by Plaintiff.

In sum, Plaintiff has utterly failed to plead sufficient information to demonstrate the requisite connection between herself and the Detailer Defendants and her claims against them cannot defeat diversity jurisdiction.

**C.    Plaintiff Fails To State Any Viable Cause of Action Against The Detailer Defendants.**

Plaintiff's claims against the Detailer Defendants fail as a matter of Mississippi substantive law.

### 1.    Plaintiff's strict liability, negligence, and breach of warranty claims fail.

As noted, Plaintiff alleges generally that "Defendants" are liable under product liability and breach of warranty theories. *See* Compl. 16-25. Assuming *arguendo* that these allegations are directed at the Detailer Defendants, they do not state a valid claim because the detailers are not "sellers" of the product in question—which is a required element of each of Plaintiff's product liability and breach of warranty claims—but are employees of the pharmaceutical companies. At most, "[s]uch employees are not 'in the business of selling products' but rather

are employed by companies that are 'in the business of selling products for use or

consumption.'" *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158 (S.D. Miss. 1997) (holding

there was no reasonable basis to predict Mississippi law would impose strict liability upon the

employees of businesses who sell products to consumers) (quoting RESTATEMENT (SECOND) OF

TORTS § 402(A) (1965)); *see In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D.

Pa. 2002) ("[S]ales representatives are not considered "sellers" under Mississippi law, but rather,

employees of the businesses who are sellers."). *See also Gordon v. Pfizer Inc.*, No. CV-06-RRA-

703-E, 2006 WL 2337002, at *7 (N.D. Ala. May 22, 2006) (holding that Pfizer detailers "are not

considered to be sellers or suppliers of the prescription drugs they represent" under Alabama law,

but are "simply [] 'detailer[s]' on behalf of [their] employer," and a detailer's "affidavit

constitutes affirmative proof . . . that he is not a 'seller' or 'manufacturer.' To the contrary, he is

simply a 'detailer' on behalf of his employer, Pfizer" and is therefore improperly joined); *In re*

*Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004)

("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the

pharmaceutical manufacturer], and not the sales representatives, was the 'seller.'"); *DaCosta v.*

*Novartis AG*, No. CV-01-800-BR, 2002 WL 31957424, *8 (D. Or. Mar. 1, 2002) (holding

pharmaceutical sales representative "merely an employee" of pharmaceutical company and was

not strictly liable for drugs he promoted).[9]

Moreover, even if detailers make information available that may facilitate the sale of a

prescription drug, they are not themselves subject to individual liability as the "seller" of their

---

[9] *See, e.g.*, RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (stating that a product distributor's sales personnel are not subject to individual liability as seller of a product under terms of the Restatement). To hold the individual employees liable in the circumstances presented would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal. "[T]here is no principle of 'respondeat inferior.'" RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006).

employer's prescription drugs. "Persons assisting or providing services to product distributors, while indirectly facilitating commercial distribution of products, are not subject to liability under the rules of this Restatement." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (emphasis added). In particular, "[s]ales personnel" are excluded from the class of those who "sell[] or otherwise distribute[]" a product, and are not subject to strict products liability. *Id.*; *see also* AM. L. PROD. LIAB. 3D § 5.45 (1987) ("[T]he 'sellers' [for purposes of strict liability] are the businesses, not employees who act solely as agents for their principals."); *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 425 ("under Mississippi law sales representatives are not liable for breach of warranty.").

Here, Plaintiff does not allege any acts or omissions of the Detailer Defendants outside of the ordinary course and scope of their employment. To the contrary, Plaintiff acknowledges that "at all times material hereto [each Detailer Defendant] . . . was acting *within* the coarse [*sic*] and scope of their [*sic*] employment with the Pfizer Defendant's [*sic*]." Compl. ¶ 8 (emphasis added). Each of the Detailer Defendants has submitted affirmative proof that, in detailing Bextra®, they acted solely within the ordinary scope of their employment. *See, e.g.*, St. Amant Decl. ¶ 3 (Exhibit B).[10]

Because the Detailer Defendants are not considered "sellers" under Mississippi law, all of Plaintiff's failure to warn-type claims that are premised on such a finding necessarily fail, including the strict liability, negligence, and warranty claims. *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 424-25 (rejecting negligence, failure to warn, misrepresentation,

---

[10] Affidavits are considered in determining improper joinder. *See, e.g.*, *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir. 2003); *Johnson*, 114 F. Supp. at 524 (a court may "'pierce the pleadings'" to determine whether improper joinder exists); *Legg*, 428 F.3d at 1322-23 (holding that the district court committed legal error and abused its discretion in failing to consider affidavits submitted by detailers in support of the removal).

and breach of warranty claims against detailers under Mississippi law); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 286 (same); *Johnson*, 114 F. Supp. 2d at 525 (holding that pharmaceutical detailers had no duty to warn); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 00-102, 2000 U.S. Dist. LEXIS 22694, *10 (S.D. Miss. Sept. 25, 2000) (following *Johnson* and deeming detailers to be improperly joined).

Alternatively, even assuming *arguendo* that the detailers could be deemed sellers under Mississippi law (and they cannot), any duty to warn extends only to Plaintiff's physician, not to Plaintiff herself, under the application of the learned intermediary doctrine. *See Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) ("Where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use."). The rationale underlying this approach is that, in the case of prescription drugs, it is the prescribing physician who,

> [a]s a medical expert, . . . can take into account the propensities of the drug, as
> well as the susceptibilities of his patient . . . . The choice he makes is an informed
> one, an individualized medical judgment bottomed on a knowledge of both patient
> and palliative. Pharmaceutical companies, then, who must warn ultimate
> purchasers of dangers inherent in patent drugs sold over the counter, in selling
> prescription drugs are required to warn only the prescribing physician, who acts
> as the 'learned intermediary' between manufacturer and consumer.

*Id.* at 691 (quoting *Reyes v. Wyeth Labs.*, 498 F.2d 1264 (5th Cir. 1974)); *see also Moore v. Memorial Hospital*, 825 So. 2d 658, 664-65 (Miss. 2002) (extending learned intermediary doctrine to pharmacists).

Applying this analysis, numerous courts applying Mississippi law have deemed pharmaceutical detailers improperly joined on the basis of the learned intermediary doctrine. *See, e.g., Walker*, 2003 WL 21517997, *3 ("the sales representative selling the device is under no duty to warn patients"); *Johnson*, 114 F. Supp. 2d at 525 (same); *In re Rezulin Prods. Liab.*

*Litig.*, 133 F. Supp. 2d at 282 ("If pharmaceutical sales representatives handling prescription drugs have any duty to warn anyone of dangers of their products, the duty is to warn the physicians to whom they promote the product. In any case, they have no duty to warn patients."); *id.* ("insofar as these complaints rest on a contention that the sales representatives failed to warn plaintiffs or the public generally, there is no reasonable chance that the Mississippi courts would find them sufficient"); *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 425 (same).

In sum, because the Detailer Defendants are not sellers under Mississippi law, and because they owed no duty to warn to Plaintiff, none of the product liability or breach of warranty claims against the detailers has any reasonable probability of success.

### 2. Any allegation of "knowing" misrepresentation or fraud against the Detailer Defendants is rebutted by their sworn declarations.

The detailers also are improperly joined because any allegation of "knowing" misconduct—and there is none—is rebutted by Defendants' proof. The detailers' sworn declarations are clear that their statements were "derived exclusively from education provided to [them] by [the applicable Pharmaceutical Defendant]," including the FDA-approved package inserts. *See, e.g.*, St. Amant Decl. ¶ 5 (Exhibit B). They had "no control over content." *Id.* They did not, as field representatives, conduct independent research regarding the drugs they detailed. *Id.* ¶ 7. In short, they had no knowledge beyond that conveyed to them by their employer, one of the Pharmaceutical Defendants.

The detailers' declarations negate any possible allegation that they knowingly participated in any tortious conduct. To state a fraud or misrepresentation claim under Mississippi law, Plaintiff must prove:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge

of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996). Here, several essential elements are missing from Plaintiff's allegations or are rebutted by the detailers' sworn declarations, including that the detailers knew of their statements' alleged falsity or were culpably ignorant thereof; that those alleged falsehoods caused Plaintiff's injury; that Plaintiff actually was the "hearer" of any of the detailers' purported misstatements; or that Plaintiff could have detrimentally relied upon such alleged falsehoods. *See Johnson*, 114 F. Supp. 2d at 525 ("Plaintiffs have no proof . . . that any of the named representatives made any representations directly to any of the Plaintiffs. Thus, none of the Plaintiffs was the 'hearer' of any of the sales representatives' alleged misrepresentations. Nor is there proof that any representations were made to any of the Plaintiffs' physicians. Again Plaintiffs have failed to establish any connection between themselves and the named sales representatives. Plaintiffs have not rebutted the affidavit testimony of the sales representatives . . . .") (citing *Allen*, 671 So. 2d at 642).

When presented with proof similar to the declarations provided with this Notice, numerous federal courts have held that it established that the individual pharmaceutical representatives were improperly joined. *See, e.g., id.* (relying on detailer's affidavit testimony in rejecting fraud and misrepresentation claims and finding improper joinder); *Legg*, 428 F.3d at 1323-24 (concluding that there was no reasonable possibility of recovery against nondiverse detailer where detailer had submitted sworn statement refuting plaintiff's claims and plaintiff had not provided any contrary evidence); *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip op. at 11-13 (N.D. Ala. Mar. 7, 2007) (holding allegations of fraud and fraudulent

misrepresentation rebutted by Pfizer detailers' uncontested declarations) (Exhibit C); *Gordon*, 2006 WL 2337002, at *7 (same); *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20765, 2004 WL 1824357, *4 (E.D. Pa. Aug. 12, 2004) (holding that allegations of knowing participation in fraudulent or tortious conduct were rebutted by non-diverse detailer defendants' sworn testimony).

Here, there is nothing to refute the detailers' declarations that their statements were neither knowingly untruthful nor made directly to Plaintiff. Further, there is no evidence that the detailers—who acted within the ordinary course and scope of their employment, *see*, *e.g.*, St. Amant Decl. ¶ 3—either could have or did agree with, participate with, conspire with or act in concert with their employer in furtherance of any alleged scheme to defraud Plaintiff. Accordingly, Plaintiff's fraud-based claims are legally deficient. *See Cavallini*, 44 F.3d at 264 (determination whether removal to federal court is appropriate is made "on the basis of claims in the state court complaint as it exists at the time of removal"). Thus, Plaintiff has no reasonable chance of prevailing on her fraud-based claims against the Detailer Defendants, and for this additional reason, they have been improperly joined.

## IV.

### The Amount-in-Controversy Requirement is Satisfied

The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is plainly satisfied. It is facially apparent that Plaintiff asserts claims which, if proved, would more likely than not exceed $75,000, exclusive of interest and costs. The following alleged facts support a finding of the requisite amount in controversy:

Plaintiff alleges that, as a result of taking Bextra®, she sustained "[s]ubstantial injuries including, among other things, heart attack." Compl. ¶ 133. She further alleges that her "injuries

caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced [her] ability to enjoy life." *Id.* Plaintiff also alleges that she suffered "[i]ntense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages." *Id.* at ¶ 134. And plaintiff allegedly expended "[s]ubstantial sums of money for medical, hospital, and related care." *Id.* ¶¶ 133, 148.

Plaintiff seeks unlimited "monetary damages for personal injuries pursuant to MS Code Ann. Sec. 11-7-13." *Id.* ¶ 1; *id.* at 31-32. Plaintiff also seeks unlimited punitive damages. *Id.* ¶ 15.

Based upon the magnitude of these allegations, it is facially apparent that Plaintiff asserts claims which, if proved, would exceed $75,000, exclusive of interest and costs. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (stating that where it is "facially apparent" from the state-court complaint that the amount in controversy exceeds the jurisdictional minimum, then the defendant need only point such fact out to successfully bear its burden); *see also, e.g., Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (concluding that district court did not err in finding that personal injury claims exceeded $75,000 where the claimant alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."). Further, federal courts sitting in diversity in Mississippi "have routinely held that unspecified claims for punitive damages sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. §1332." *Ross v. First Family Fin. Servs., Inc.*, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) (citing *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993)). Accordingly, the amount in controversy threshold plainly is met based upon the allegations of Plaintiff's Complaint.

## V.

### Consent to Removal

All defendants required for removal have consented to and/or joined in this removal. A defendant that has not been served and/or who is improperly joined need not consent to removal. *Moore v. Interstate Fire Ins. Co.*, 717 F. Supp. 1193, 1195 (S.D. Miss. 1989).[11]

## VI.

### Removal is Timely

Defendants Pfizer and Pharmacia were served on July 2, 2007. Defendant Searle was served on July 5, 2007. Service was attempted on Defendant Nowell on June 29, 2007. Service was attempted on Defendant Rumsey on July 2, 2007. On information and belief, no other defendant has yet been served. Accordingly, this Notice of Removal is timely filed within 30 days after the service on any Defendant of a summons and copy of the initial pleading setting forth the claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

## VII.

### Proper Court for Removal

The United States District Court for the Southern District of Mississippi, Southern Division, embraces Harrison County, Mississippi, the county in which the state court action is now pending. *See* 28 U.S.C. § 104(b)(4). Thus, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

---

[11] Nonetheless, although their consent is not required because they are fraudulently joined, Defendants Rita Nowell and Mickey Rumsey, the only Detailer Defendants on whom service has been attempted, consent to the removal of this suit to this Court. *See, e.g.*, *Nixon v. Wheatley*, 368 F. Supp. 2d 635, 639

## VIII.

### Process and Pleadings

Pursuant to 28 U.S.C. § 1446(a), a certified copy of the entire file, including all process, pleadings, and orders served upon the defendants is attached hereto as Exhibit A.

### IX.

If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of the position that this case is removable.

WHEREFORE, Searle, Pfizer, and Pharmacia (f/k/a Monsanto Company that was organized in 1933) serve this Notice of Removal, and remove this civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 to the United States District Court for the Southern District of Mississippi, Southern Division, being the district and division of said court for the county in which this action is pending.  Plaintiff is notified to proceed no further in state court unless by order of the United States District Court for the Southern District of Mississippi, Southern Division.

This the 27th day of July, 2007.

Respectfully submitted,

**G. D. SEARLE LLC, PHARMACIA CORPORATION (f/k/a Monsanto Company that was organized in 1933 (improperly captioned in Plaintiff's Complaint as "Monsanto Company")), and PFIZER INC.**

By: _____

Walter T. Johnson (MBN 8712)

---

(E.D. Tex. 2005) (holding that statement in notice of removal that defendants, who were represented by the same counsel, joined the removal was sufficient to satisfy the unanimity requirement).

OF COUNSEL:

WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300
Post Office Box 650
Jackson, Mississippi 39205-0650
Telephone:  (601) 948-6470
Facsimile:  (601) 354-3623

SOCHA, PERCZAK, SETTER & ANDERSON, P.C.
Charles Q. Socha (MBN 101382)
K. Michele Anderson (MBN 101421)
Denver Financial Center Tower I,
1775 Sherman Street, Suite 1925
Denver, CO  80203
Telephone:  (303) 832-7265
Facsimile:  (303) 832-7438

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I, Walter T. Johnson, do hereby certify that I have this day served via United States mail, first-class postage prepaid, a true and correct copy of the above and foregoing document to the following:

Navan Ward, Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36103-4160

ATTORNEYS FOR PLAINTIFF

Leigh D. Vernon
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300
Post Office Box 650
Jackson, Mississippi 39205-0650

ATTORNEYS FOR RITA NOWELL AND MICKEY RUMSEY

Gayle Parker
P.O. Box 998
Gulfport, Mississippi 39502

HARRISON COUNTY CIRCUIT CLERK

This the 27th day of July, 2007.

WALTER T. JOHNSON