# IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

**CAROLYN MONTIFORTE**　　　　　　　　　　　　　　　　**PLAINTIFF**

**vs.**　　　　　　　　　　　　　　　　**CIVIL ACTION NO. A2401-07-214**

**PFIZER, INC., ET AL.**　　　　　　　　　　　　　　　　**DEFENDANTS**

---

### CLERK'S CERTIFICATE

---

I hereby certify that attached hereto is a true and correct copy of the entire file, including

all process, pleadings, and orders, presented to this office for filing, docketed, and filed in this

office as of this date in the above-referenced matter.

IN WITNESS HEREOF, I have hereunto set my hand and seal of said Court of Harrison

County, State of Mississippi, this 24th day of July, 2007.

　　　　　　　　　**GAYLE PARKER, CLERK OF CIRCUIT COURT OF
　　　　　　　　　HARRISON COUNTY, MISSISSIPPI**

　　　　　　　　　BY: _Dona Patterson_ , D.C.

| SEAL |



**EXHIBIT**

**A**

```
CCU863R                    ******* CIRCUIT COURT JUDICIAL 1 *******        PAGE#:        1
DP1A                              CASE HISTORY LISTING                     7/23/07 14:26:00
```

CASE NO:    A24010700214

LITIGANT: ALL
***** CASE FILE INFORMATION          *****
    Case type:  TORTS            PRODUCTS LIABILITY          Filed:  06/13/07
 CAROLYN MONTIFORTE    VS PFIZER INC ET AL
         Status:  A          Priority: N
      Judge    :  ROGER T. CLARK
 Case Totals
 Assessed:       115.00      Paid:       115.00      Bal Due:        .00
***** OBLIGATIONS                    *****
 CIVIL COURT COST                        Amt:      115.00  Type: COST
 SUBTYPE
        Disb Amt:      115.00            Disb Dte  6/30/07
                        Paym Pri: 0100
         Litigant: MONTIFORTE, CAROLYN
 JURY TAX                                Amt:        3.00
     Disbursement: 0063007 Disb Amt:      3.00
         Acct Sts: N      Priority: 200
         Payee: COUNTY TREASURY
 STENO FEE                               Amt:       10.00
     Disbursement: 0063007 Disb Amt:     10.00
         Acct Sts: N      Priority: 200
         Payee: COUNTY TREASURY
 LAW LIBRARY                             Amt:        7.50
     Disbursement: 0063007 Disb Amt:      7.50
         Acct Sts: N      Priority: 200
         Payee: COUNTY TREASURY
 COURT ADMINISTRATOR FEE                 Amt:        2.00
     Disbursement: 0063007 Disb Amt:      2.00
         Acct Sts: N      Priority: 300
         Payee: COUNTY TREASURY
 COURT CONSTITUENTS FUND                 Amt:         .50
     Disbursement: 0063007 Disb Amt:       .50
         Acct Sts: N      Priority: 300
         Payee: COUNTY TREASURY
 COURT EDUCATION FUNDS                   Amt:        2.00
     Disbursement: 0063007 Disb Amt:      2.00
         Acct Sts: N      Priority: 300
         Payee: COUNTY TREASURY
 CLERK FEES                              Amt:       75.00
     Disbursement: 0063007 Disb Amt:     75.00
         Acct Sts: N      Priority: 100
         Payee: CIRCUIT CLERK
 CIVIL LEGAL ASSISTANCE FUND             Amt:        5.00
     Disbursement: 0063007 Disb Amt:      5.00
         Acct Sts: I      Priority: 100
         Payee: COUNTY TREASURY
```

CASE NO:    A24010700214

COMP ELECTRONIC COURT SYSTEMS FUND        Amt:      10.00
    Disbursement: 0063007 Disb Amt:        10.00
        Acct Sts: I    Priority: 100
        Payee: COUNTY TREASURY
***** PARTIES FILE INFORMATION        *****
***** PARTIES FILE INFORMATION        *****
    PLAINTIFF        MONTIFORTE, CAROLYN

                                                Person Id:    425048

    PLAINTIFF ATTY   WARD, NAVAN JR.
                     BEASLEY, ALLEN, CROW, METHVIN,
                     P.O. BOX 4160
                     MONTGOMERY       AL    36103
         Phone #:    (334) 269-2343

    DEFENDANT        PFIZER INC
    HOM              645 LAKELAND EAST DRIVE
                     SUITE 101
                     FLOWOOD          MS    00000

                                                Person Id:    16581
    DEFENDANT        PHARMACIA CORPORATION
                     SUCCESSOR TO MONSANTO CHEMICAL CO
    HOM              C/O CT CORPORATION SYSTEMS
                     645 LAKELAND EAST DR SUITE 101
                     FLOWOOD          MS    39232

                                                Person Id:    362519
    DEFENDANT        SEARLE, G D LLC

                                                Person Id:    425059
    DEFENDANT        MONSANTO COMPANY
                     C/O ITS CEO HENDRIK A VERFAILLIE
    HOM              8000 N LINDBERGH BLVD
                     ST LOUIS         MO    63167

                                                Person Id:    362495
    DEFENDANT        ST AMANT, LANCE

                                                Person Id:    425060
    DEFENDANT        NOWELL, RITA

                                                Person Id:    425061
    DEFENDANT        RANSOM, CHRISTINE

                                                Person Id:    425062

        CASE NO:     A24010700214

   DEFENDANT          RUMSEY, MICKEY

                                                         Person Id:      425063
  ***** ADDITIONAL INFORMATION BY DATE *****
   061307 CASE FILED
   061307 COMPLAINT FILED
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON MICKEY RUMSEY AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON RITA NOWELL AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON CHRISTINE RANSOM AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON G.D. SEARLE, LLC AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON LANCE ST. AMANT AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON PFIZER INC AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON MONSANTO COMPANY AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 SUMMONS ISSUED ON PHARMACIA COPORATION AND RET TO ATTY FOR SERVICE
          Litigant: MONTIFORTE, CAROLYN
   061307 Paid By: BEASLEY ALLEN     Amt:      115.00    CK    Receipt#  35485
          User ID: CBB         Reference#:  CIVIL
          Litigant: MONTIFORTE, CAROLYN
   063007 Disbursed Amt:        75.00   Payee: CIRCUIT CLERK
          Litigant: MONTIFORTE, CAROLYN
   063007 Disbursed Amt:        40.00   Payee: COUNTY TREASURY
          Litigant: MONTIFORTE, CAROLYN
   070507 SUMMONS RET (UNSERVED) ON LANCE ST. AMANT C/O PFIZER, INC./ CT
          Litigant: MONTIFORTE, CAROLYN
           CORPORATION SYSTEM DOES NOT SERVE AS REGISTERED AGENT FOR ANY
           INDIVIDUAL ADN THEREFORE CANNOT ACCEPT PROCESS DIRECTED IN THIS
           MANNER
   070507 SUMMONS RET (UNSERVED) ON CHRISTINE RANSOM C/O PFIZER, INC/ CT
          Litigant: MONTIFORTE, CAROLYN
           CORPORATION SYSTEM DOES NOT SERVE AS REGISTERED AGENT FOR ANY
           INDIVIDUAL, AND THEREFORE CANNOT ACCEPT PROCESS DIRECTED IN THIS
           MANNER
   071007 PROOF OF SERVICE RET SERVED ON RITA NOWELL BY CERTIFIED MAIL, SIGNED
          Litigant: MONTIFORTE, CAROLYN
          Completed:  6/29/07
      Disposition:  SERVICE RETURN
          BY BEN NOWELL
   071007 PROOF OF SERVICE RET SERVED CHRISTINE RANSOM BY CERTIFIED MAIL/SIGNED

CASE NO:     A24010700214

     Litigant: MONTIFORTE, CAROLYN
     Completed: 7/02/07
   Disposition: SERVICE RETURN
     BY J. JONES
071007 PROOF OF SERVICE RET SERVED ON LANCE ST AMANT/BY CERTIFIED MAIL SIGNED
     Litigant: MONTIFORTE, CAROLYN
     Completed: 7/02/07
   Disposition: SERVICE RETURN
     BY J. JONES
071007 PROOF OF SERVICE RET SERVED ON PHARMACIA CORPORATION/BY CERTIFIED
     Litigant: MONTIFORTE, CAROLYN
     Completed: 7/02/07
   Disposition: SERVICE RETURN
     MAIL, GREEN CARD SIGNED BY J.JONES
071007 PROOF OF SERVICE RET SERVED ON MICKEY RUMSEY/BY CERTIFIED MAIL
     Litigant: MONTIFORTE, CAROLYN
     Completed: 7/02/07
   Disposition: SERVICE RETURN
     GREEN CARD SIGNED BY LANRONCO RUMSEY
071007 PROOF OF SERVICE RET SERVED ON PFIZER, INC BY CERTIFIED MAIL, SIGNED
     Litigant: MONTIFORTE, CAROLYN
     Completed: 7/02/07
   Disposition: SERVICE RETURN
     BY J.JONES
071107 Check #:    7505          Amt:      75.00
     Payee: CIRCUIT CLERK
071107 Check #:    7506          Amt:      40.00
     Payee: COUNTY TREASURY

IN THE CIRCUIT COURT OF
HARRISON COUNTY, MISSISSIPPI

CAROLYN MONTIFORTE, §
§
§
PLAINTIFF, §
§
VS. § CIVIL ACTION NO. *A2-401-07-214*
§
PFIZER, INC., G. D. SEARLE, LLC. §
(hereinafter "Searle") a subsidiary of §
PHARMACIA CORPORATION, §
(hereinafter "Pharmacia"), a Foreign §
Corporation; MONSANTO COMPANY; §
LANCE ST. AMANT, RITA NOWELL, §
CHRISTINE RANSOM, and, §
MICKEY RUMSEY §
; and fictitious Defendants A, B, C §
and D being those persons, firms or §
corporations whose actions, inactions, §
fraudulent suppression, fraud, scheme to §
defraud and/or other wrongful conduct §
caused or contributed to the Plaintiff's §
injuries and damages, and whose true §
names and identities are presently unknown §
to the Plaintiff but will be substituted by §
amendment when ascertained, §
§
DEFENDANTS. §



## COMPLAINT

### TRIAL BY JURY IS REQUESTED

1.      This is a civil action brought by Plaintiff, CAROLYN MONTIFORTE, for

injuries resulting in heart attack.  Plaintiff was prescribed and used the prescription medication

BEXTRA (Valdecoxib).  This action seeks monetary damages for personal injuries pursuant to

MS Code Ann. Sec. 11-7-13, damages caused by the drugs named herein and ingested by

Plaintiff.

2.      Plaintiff, CAROLYN MONTIFORTE is an adult resident of Harrison County,

Mississippi.

3.     Plaintiff, CAROLYN MONTIFORTE, was an adult resident of Harrison County, Mississippi at the time of her injury.

4.     Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Defendant Pfizer is licensed and registered to do business in Illinois and may be served through its registered agent: CT Corporation System, 645 Lakeland East Drive Flowood, Mississippi 39232.

5.     Defendant G. D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia Corporation, and is upon information, knowledge and belief an Illinois Corporation. As such, Defendant Searle can be served through its principal address: CT Corporation System, 208 South LaSalle Street, Suite 814 Chicago, Illinois 60604. At all times relevant hereto, Searle as a subsidiary of Pharmacia Corporation and Pharmacia Corporation (hereinafter "Pharmacia"); at all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib).

6.     Defendant Pharmacia Corporation is a Delaware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent: CT Corporation System, 645 Lakeland East Drive Flowood, Mississippi 39232.

7.     Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Defendant Monsanto is licensed and registered to do business in Mississippi, and may be served through its agent: Corporation Service Company, 506 South President Street Jackson, Mississippi 39201.

8.    Defendant Lance St. Amant at all times material hereto was a sales representative for the Defendants Pfizer, Inc., G. D. Searle, Pharmacia, and Monsanto (hereinafter collectively referred to as "Pfizer") and was acting within the coarse and scope of their employment with the Pfizer Defendant's.   Upon information and belief, Defendant Amant was a resident of Mississippi and, at all times material hereto, was in the business of marketing selling and distributing Bextra. Defendant Amant can be served through the registered agent at Pfizer, Inc., c/o CT Corporation System, 645 Lakeland East Drive Flowood, Mississippi 39232. Defendant Amant, for diversity purposes, is a citizen of the state of Mississippi.

9.    Defendant  Rita Nowell at all times material hereto was a sales representative for Pfizer Defendants and was acting within the coarse and scope of their employment with the Pfizer Defendant's. Upon information and belief, Defendant Nowell is a resident of Mississippi and, at all times material hereto, was in the business of marketing selling and distributing Bextra. Defendant Nowell can be served at her home address: 2516 Linwood Drive Biloxi, MS 39531-2810. Defendant Nowell, for diversity purposes is a citizen of the state of Mississippi.

10.    Defendant  Christine  Ransom  at  all  times  material  hereto  was  a  sales representative for Pfizer Defendants and was acting within the coarse and scope of their employment with the Pfizer Defendant's. Upon information and belief, Defendant Ransom was a resident of Mississippi and, at all times material hereto, was in the business of marketing selling and distributing Bextra.  Defendant Ransom can be served through the registered agent at Pfizer, Inc., c/o CT Corporation System, 645 Lakeland East Drive Flowood, Mississippi 39232. Defendant Ransom, for diversity purposes, is a citizen of the state of Mississippi.

11.    Defendant Micky Rumsey at all times material hereto was a sales representative for Pfizer Defendants and was acting within the coarse and scope of their employment with the

3

Pfizer Defendant's. Upon information and belief, Defendant Rumsey is a resident of Mississippi and, at all times material hereto, was in the business of marketing selling and distributing Bextra. Defendant Rumsey can be served at his home address: 808 Woodglen Drive Ocean Springs, MS 39564-8213. Defendant Rumsey, for diversity purposes is a citizen of the state of Mississippi.

12.     Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Harrison County, Mississippi, either directly or by agent, and have thus availed themselves of this jurisdiction.

13.     The Plaintiffs' claims accrued in whole or in part in this judicial district and resided in this judicial circuit prior to her injuries. Some of these Defendants are foreign corporations, which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

14.     Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants Searle, Pharmacia, Monsanto, and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Searle, Pharmacia, Monsanto, and Pfizer (hereinafter "Removing Defendants" or "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

15.     At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## BACKGROUND

16.     Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. The Removing Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. The Sales Representatives Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

17.     At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

18. This Complaint seeks redress for damages sustained by CAROLYN MONTIFORTE use of Bextra (Valdecoxib), manufactured and sold by Pharmacia, G.D. Searle, Monsanto and Pfizer, the Defendants herein.

19. The Plaintiff was only 58 years old on or about June 14, 2004, when she suffered a heart attack due to the use of Bextra (Valdecoxib).

20. The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

21. At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

22. Had Defendant properly disclosed the risks associated with using Bextra (Valdecoxib), CAROLYN MONTIFORTE would not have taken it for treatment of pain associated with injury.

23. This action is being brought in the Circuit Court of Harrison County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

A.   **Facts Regarding Bextra and Bextra's Market Launch**

24. Bextra is one of a class of pain medications called non-steroidal anti-inflammatory drugs ("NSAIDs"). Aspirin, naproxen (trade name Aleve), and ibuprofen (trade name Advil) are examples of well-known NSAIDs.

25. NSAIDs reduce pain by blocking the body's production of pain transmission enzymes called cyclo-oxygenase or "COX." There are two forms of COX enzymes—COX-1 and COX-2. Aspirin, naproxen and ibuprofen all act by blocking COX-1 and COX-2 enzymes.

26. In addition to decreasing inflammation, the prostaglandins that are supported by

6

COX-1 enzymes are involved in the production of gastric mucus; this protects the stomach wall from the hydrochloric acid present in the stomach. It is generally accepted in the medical community that by blocking the COX-1 enzyme, the body's ability to protect gastric tissue is hampered and as a result, can cause harmful gastrointestinal side effects, including stomach ulceration and bleeding.

27.    Prostaglandin I2 is the predominant cyclooxygenase product in endothelium, inhibiting platelet aggregation (preventing clot formation), causing vasodilation, and preventing the proliferation of vascular smooth muscle. Whereas older NSAIDS inhibit Thromboxane A2 and Prostaglandin I2, the COX-2 inhibitors leave Thromboxane A2 unaffected. Thromboxane A2 is a potent platelet aggregator and vasoconstrictor, which is synthesized by platelets. Therefore, while the older NSAIDS suppress platelet aggregation and vasoconstriction, the COX-2 inhibitors support it.

28.    Traditional NSAIDs like aspirin reduce pain/inflammation and therefore pain by inhibiting both COX-1 and COX-2 enzymes simultaneously. As would be expected, traditional NSAIDs may cause ulcers in the stomach. However, traditional NSAIDs do not cause blood clots, rather they actually reduce the risk of clots and help protect heart function.

29.    Defendants and other pharmaceutical companies set out to remedy these ulcer and bleeding problems suffered by some NSAID users by developing "selective" inhibitors that would block only COX-2 production, thus (supposedly) allowing the proper maintenance of gastric tissue while still reducing inflammation.

30.    In making this decision, Defendants and their predecessors in interest either intentionally ignored or recklessly disregarded current medical knowledge that selective COX-2 inhibition lowers prostacyclin levels and causes thromboxane $A_2$ to be uninhibited, causing blood clots, and giving rise to various clot-related cardiovascular events, including heart attack, stroke, unstable angina. The vasoconstriction and fluid retention cause the hypertension.

31.    Pfizer launched Celebrex, the first of the three major COX-2 inhibitor drugs, in early 1999 and initiated a massive marketing campaign to convince doctors and consumers of the superiority of their new "blockbuster" drug over less inexpensive NSAIDs. In May 1999, Merck

& Co., Inc. ("Merck") launched Vioxx, its own selective COX-2 inhibitor.

32. Seeking increased market share in this extremely lucrative market, Defendants, and their predecessors in interest, also sought approval of a "second generation" selective COX-2 inhibitor and filed for FDA approval of Bextra on January 16, 2001 for the (i) prevention and treatment of acute pain, (ii) treatment of primary dysmenorrhea, and (iii) relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis.

33. The FDA granted approval of the new drug on November 16, 2001, for two particular uses: (i) treatment of primary dysmenorrhea and (ii) relief for the signs and symptoms of osteoarthritis and rheumatoid arthritis.

34. The FDA did not grant approval to market and promote Bextra for the management or prevention of acute pain.

35. The FDA did not grant approval to promote Bextra as more effective than other NSAIDs in preventing clinically serious gastrointestinal events such as perforations, ulcers or gastric bleeding.

36. Even without a label that allowed Defendants to legitimately claim superior safety, when Defendants, and their predecessors-in-interest, began marketing Bextra in early 2002, Defendants and their representatives and agents misrepresented the safety profile of Bextra to consumers, including Plaintiff, the medical community, healthcare providers, and third party payers.

37. Defendants proceeded to promote, market, sell, and distribute Bextra as a much safer and more effective pain reliever than other NSAIDs, such as aspirin, naproxen, and ibuprofen.

**C. Facts Regarding Bextra's Safety and Defendants' Knowledge Thereof.**

38. The potential for cardiovascular risk of selective COX-2 inhibitors was known to Defendants long before the FDA granted market approval in November 2, 2001. By 1997, and prior to the submission of the New Drug Application (the "NDA") for Bextra, Defendants was aware that, by inhibiting COX-2, Bextra altered the homeostatic balance between prostacylcin synthesis and thromboxane and thereby, increased the prothrombotic effects of the drugs,

8

causing blood clots to form in those who ingested it. *See* Topol, E.J., *et al.*, *Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*, *JAMA*, August 22, 2001 at 954. Although all COX-2 inhibitors have this mechanism of action, Bextra was the most selective COX-2 inhibitor proposed for approval. Accordingly, it had the greatest potential to cause adverse cardiovascular and cerebrovascular events.

39.    As Pharmacologist, Dr. Garrett Fitzgerald, of the University of Pennsylvania, reported in an editorial published in *The New England Journal of Medicine* on October 21, 2004, that it was known as early as 1999 that selective COX-2 inhibitors, such as Bextra, suppressed the formation of prostaglandin I-2 in healthy volunteers, inhibited platelet aggregation in vitro, and may predispose patients to myocardial infarction or thrombotic stroke.

40.    Nevertheless, on January 16, 2001, Defendants submitted an NDA to the FDA for Bextra, omitting information about the extent of the risks associated with Bextra. Without a complete picture of the potential hazards associated with the drug, the FDA approved Bextra on or about November 16, 2001.

41.    Based on the studies performed on Celebrex, Vioxx, Bextra, and other COX-2 inhibitors, and basic research on this type of selective inhibitor which had been widely conducted, Defendants knew when Bextra was being developed and tested that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risk factors. Studies show that selective COX-2 inhibitors, including Bextra, decrease blood levels of a prostacyclin. When those levels fall, the arteries are more vulnerable to clotting, high blood pressure, heart attack, and stroke.

42.    On December 9, 2004, the FDA issued new information on side effects associated with the use of Bextra and required the addition of certain warnings to, and the strengthening of other warnings on, the Bextra label. The enhanced warnings followed in the wake of the results of additional cardiovascular studies performed by Defendants, as well as numerous complaints to the FDA regarding severe skin reactions.

43.    Yet well prior to this warning, Defendants had knowledge of the coronary and

cardiovascular safety risks of Bextra from several studies. *See e.g.*, Otto, E.O., *Efficacy and Safety of the Cyclooxygenase 2 Inhibitors Parecoxib and Valdecoxib in Patients Undergoing Coronary Artery Bypass Surgery*, *The Journal of Thoracic and Cardiovascular Surgery*, June 2003 at 1481.

44.     Even Defendants' own (and Pfizer funded) post- drug approval meta-analysis study (first presented on March 31, 2003 and again on May 15, 2003) included this data showing an increased cardiovascular risk in patients treated with Bextra after undergoing coronary artery bypass graft surgery. Observed events included heart attack, stroke, and blood clots in the legs and lungs. The results were particularly relevant and striking as each of the study participants who were a post-bypass surgery patient was taking anti-clotting agents at the time their exposure to Bextra was being tracked.

45.     In mid-January 2005, a peer-reviewed paper from the University of Pennsylvania found that in patients having heart bypass surgery, those who took Bextra in the intravenous form, parecoxib, as opposed to a placebo, were three times more likely to have a heart attack or stroke.

46.     From February 16-18, 2005, the FDA's Drug Safety and Risk Management Advisory Committee and the Arthritis Drug Advisory Committee met jointly to further examine the safety of COX-2 inhibitors. There, FDA Office of Drug Safety Officer David Graham testified that selective COX-2 inhibitors increase the risk for adverse cardiovascular events at about the same rate as cigarette smoking, hypertension, and diabetes.

47.     Despite years of studies on selective COX-2 inhibitors, as well as the disturbing new studies specifically analyzing the risks of Bextra, Defendants failed to take any action to protect the health and welfare of patients, but instead, continued to promote the drug for sale even after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug Advisory Committee meetings.

48.     On April 7, 2005, the FDA finally insisted that Defendants "voluntarily withdraw" Bextra from the U.S. market, stating:

> ". . . the Agency has concluded that the overall risk versus benefit profile of Bextra is unfavorable. This conclusion is based

10

on the potential increased risk for serious cardiovascular (CV) adverse events, which appears to be a class effect of non-steroidal anti-inflammatory drugs (NSAIDs) (excluding aspirin), an increased risk of serious skin reactions (e.g. toxic epidermal necrolysis, Stevens-Johnson syndrome, erythema multiforme) compared to other NSAIDs, and the fact that Bextra has not been shown to offer any unique advantage over the other available NSAIDs."

49.    FDA Alert for Healthcare Professionals, April 7, 2005.

Continuing, the FDA noted:

"Bextra has been demonstrated to be associated with an increased risk of serious adverse CV events in two short-term trials in patients immediately post-operative from coronary artery bypass graft (CABG) surgery . . . .    FDA has concluded that it is reasonable to extrapolate the adverse CV risk information for Bextra from the short-term CABG trials to chronic use given the fact that other COX-2 selective NSAIDs have been shown in long-term controlled clinical trials to be associated with an increased risk of serious adverse CV events (e.g., death, MI, stroke), and the well described risk of serious, and often life-threatening gastrointestinal bleeding . . . .    To date, there have been no studies that demonstrate an advantage of Bextra over other NSAIDs that might offset the concern about the[] serous skin risks, such as studies that show a GI safety benefit, better efficacy compared to other products, or efficacy in a setting of patients who are refractory to treatment with other products."

50.    The scientific data available during and after Bextra's approval process made clear to Defendants that their formulation of Bextra would cause a higher risk of blood clots, stroke and/or myocardial infarctions among Bextra consumers, alerting them to the need to do additional and adequate safety studies.

51.    As stated by Dr. Topol on October 21, 2004, in *The New England Journal of Medicine*, outlining Defendants' failure to have conducted the necessary trials before marketing to humans " . . . it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of (COX-2 inhibitors).  Such a trial needed to be conducted in patients with established coronary artery disease, who frequently have coexisting osteoarthritis requiring medication and have the highest risk of further cardiovascular events."

52.    Dr. Topol was also the author on the study published in August 2001 in JAMA (listed above) that reported an increased risk of thrombotic cardiovascular events in persons who

used COX-2 inhibitors.

53.     Based upon readily available scientific data, Defendants knew, or should have known, that their pre-approval testing of Bextra did not adequately represent the cross-section of individuals who were intended consumers and therefore, likely to take Bextra.  Therefore, Defendants' testing and studies were grossly inadequate.  *See, e.g.*, PDR entry for Bextra (noting that:  "**Platelets:**  In four clinical studies with young and elderly (>/=65 years) subjects, single and multiple doses up to 7 day mg BID had no effect on platelet aggregation").

54.     Had Defendants done adequate testing prior to approval and "market launch," rather than the extremely short duration studies done on the small size patient base that was actually done) Pharmacia and Searle's scientific data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of Bextra consumers.  Adequate testing would have shown that Bextra possessed serious side effects for individuals such as Plaintiff.  Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

55.     In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but this information was intentionally suppressed by Defendants in order for them to gain significant profits from continued Bextra sales.

56.     Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

57.     At the time Defendants manufactured, advertised, and distributed Bextra to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers such as Plaintiffs would not purchase Bextra, but instead would purchase other cheaper and safer NSAIDs.

**D.    Facts Regarding Defendants' Marketing and Sale of Bextra**

58.    Plaintiffs and at all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive Bextra as a safer and better drug than its other NSAIDs and, therefore, purchase Bextra.

59.    Defendants widely and successfully marketed Bextra throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of Bextra in order to induce a widespread use and consumption.  Bextra was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems.  Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiff's prescribing physicians.

60.    Despite knowledge of the dangers presented by Bextra, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' product, Bextra, and failed to warn the public, including Plaintiff, of the serious risk of injury occasioned by the defects inherent in Defendants' product, Bextra.  Defendants and their officers, agents and managers intentionally proceeded with the inadequate safety testing, and then the manufacturing, sale and marketing of Defendants' product, Bextra, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests.  Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Plaintiff.

61.    In an elaborate and sophisticated manner, Defendants aggressively marketed Bextra directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payers, medical care organizations, and large institutional buyers (*e.g.*, hospitals) to include Bextra on their formularies.  Faced with the increased demand for the drug by consumers and health care professionals that resulted from Defendants' successful advertising and marketing blitz, third party payers were compelled to add Bextra to their formularies.  Defendants' marketing campaign specifically targeted third party payers, physicians, and consumers, and was designed to convince them of both the therapeutic

13

and economic value of Bextra.

62.     Defendants represented that Bextra was similar to ibuprofen and naproxen but was superior because it lacked any of the common gastrointestinal adverse side effects associated with these and other non-steroidal anti-inflammatory drugs ("NSAIDS"). For instance, NSAIDS can, in certain patients, cause gastrointestinal perforations, ulcers and bleeding with long-term use. Defendants promoted Bextra as a safe and effective alternative that would not have the same deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

63.     Bextra possessed dangerous and concealed or undisclosed side effects, including the increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes. In addition, Bextra was no more effective than traditional and less expensive NSAIDs and, just like traditional NSAIDs, carried a risk of perforations, ulcers, and gastrointestinal bleeding. Defendants chose not to warn about these risks and dangers.

64.     Defendants knew of these risks before the U.S. Food and Drug Administration (the "FDA") approved Bextra for sale on November 16, 2001, but Defendants ignored, downplayed, suppressed, omitted, and concealed these serious safety risks and denied inefficacy in its promotion, advertising, marketing, and sale of Bextra. Defendants' omission, suppression, and concealment of this important information enabled Bextra to be sold to, and purchased, or paid for by, the Consumers at a grossly inflated price.

65.     Consequently, Bextra captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2002 alone (after a drug launch in March of 2002), sales of Bextra exceeded $1.5 billion, despite the significantly higher cost of Bextra as compared to other pain relievers in the same family of drugs.

66.     It was not until April 7, 2005, that Defendants finally acknowledged Bextra's deleterious side effects and announced that they were withdrawing the drug from the worldwide market based on what it misleadingly termed "new" and "unexpected" evidence linking Bextra to an increased risk of heart attacks and strokes.

14

67.     Had Defendants done adequate testing prior to approval and "market launch," Pharmacia's scientific data would have revealed significant increases in stroke and myocardial infarction amongst the intended population of BEXTRA consumers.  Adequate testing would have shown that BEXTRA possessed serious side effects.  Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

68.     In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but this information was intentionally suppressed by Defendants in order for them to gain significant profits from continued BEXTRA sales.

69.     Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

70.     At the time Defendants manufactured, advertising, and distributed BEXTRA to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers such as Plaintiffs would not purchase BEXTRA, but instead would purchase other cheaper and safer NSAID drugs.

71.     At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers, including plaintiff, and their doctors would perceive BEXTRA as a better drug than its competitors and, therefore, purchase BEXTRA.

72.     Defendants widely and successfully marketed BEXTRA throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of BEXTRA in order to induce a widespread use and consumption.  BEXTRA was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiff's prescribing physicians.

15

73.     Prior to manufacturing, sale and distribution of BEXTRA, Defendants, through their officers, director and managing agents, had notice and knowledge from several sources, that BEXTRA presented substantial and unreasonable risks of harm to the consumer.   As such, BEXTRA consumers, including Plaintiff, were unreasonably subject to risk of injury or death from the consumption of Defendants' product, BEXTRA.

74.     Despite such knowledge, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' product, BEXTRA, and failed to warn the public, including Plaintiffs, of the serious risk of injury occasioned by the defects inherent in Defendants' product, BEXTRA.  Defendants and their officers, agents and managers intentionally proceeded with the inadequate testing, and then the manufacturing, sale and marketing of Defendants' product, BEXTRA, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests.  Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Plaintiff.

<u>FIRST CAUSE OF ACTION</u>
<u>NEGLIGENCE</u>

75.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

76.     Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib).

77.     At all times material hereto, Defendants had a duty to users and/or consumers of Bextra (Valdecoxib), including Plaintiff, CAROLYN MONTIFORTE, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valdecoxib).

16

78.     Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valdecoxib) in that: Bextra (Valdecoxib) was defective when put on the market by Defendants; that with such defect, Bextra (Valdecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Bextra (Valdecoxib) or in inspecting it for defects. Specifically, Defendants breached their duty by, among other things:

a.      Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, to the potential risks and serious side effects of the drug;

b.      Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c.      Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

d.      Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

e.      Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

17

f.  Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g.  Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including CAROLYN MONTIFORTE, in order to make a profit from sales.

79.  Defendants knew or should have known that Bextra (Valdecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware.  Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Bextra (Valdecoxib) knowing that there were safer methods for pain relief.

80.  As a direct, legal, proximate and producing result of the negligence of Defendants, CAROLYN MONTIFORTE sustained substantial injuries including, among other things, a heart attack.  This injury caused extensive pain and suffering and severe emotional distress and substantially reduced CAROLYN MONTIFORTE's ability to enjoy life.  In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

81.  As a direct, legal, proximate and producing result of the negligence of Defendants, CAROLYN MONTIFORTE was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

82.  As a direct, legal, proximate and producing result of the negligence of Defendants, CAROLYN MONTIFORTE required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a

18

contributing cause of Plaintiff's injuries and Plaintiff's economic and non economic loss. As a result of Defendant's negligence, Plaintiff has suffered and will continue to suffer.

83.     By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

<div align="center">

SECOND CAUSE OF ACTION
STRICT PRODUCTS LIABILITY
DEFECTIVE DESIGN

</div>

84.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

85.     At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra (Valdecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

86.     At all times material hereto, Bextra (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.     When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

b.     The drug was insufficiently tested;

c.     The drug caused harmful side effects that outweighed any potential utility;

<div align="center">19</div>

d.     The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

e.     In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Bextra (Valdecoxib) should not have been marketed in that condition.

87.    At all times the drug Bextra (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

88.    At all times, CAROLYN MONTIFORTE used Bextra (Valdecoxib) for its intended or reasonably foreseeable purpose.

89.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the defective and unreasonably dangerous condition of Bextra (Valdecoxib) caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

90.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries, caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

91.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff, CAROLYN MONTIFORTE, required reasonable and necessary health care treatment and service and had incurred expenses therefore.

92.     By reason of the foregoing, CAROLYN MONTIFORTE was damaged by the wanton and willful recklessness of the Defendants, who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### FAILURE TO WARN

93.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

94.     Bextra (Valdecoxib) was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, to the dangerous risks and reactions associated with Bextra (Valdecoxib) when used for its intended or reasonably foreseeable purpose. Those dangerous risks and reactions included, but were not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects.

95.     At all times, CAROLYN MONTIFORTE used the drug for its intended or reasonably foreseeable purpose.

96.     CAROLYN MONTIFORTE could not have discovered any defect in the drug through the exercise of care.

97.     Defendants, as manufacturers of a prescription drug, are held to the level of knowledge of an expert in the field.

98.     The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

21

99.     Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Bextra (Valdecoxib).

100.    As a direct, legal, proximate and producing result of Defendant's failure to warn, CAROLYN MONTIFORTE sustained harm, including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced CAROLYN MONTIFORTE's ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

101.    As a direct, legal, proximate and producing result of Defendants' failure to warn, CAROLYN MONTIFORTE was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

102.    As a direct, legal, proximate and producing result of Defendants' failure to warn, CAROLYN MONTIFORTE required reasonable and necessary health care treatment and services and had incurred expenses therefore.

103.    By reason of the foregoing, CAROLYN MONTIFORTE was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

<div align="center">

FOURTH CAUSE OF ACTION
BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

</div>

104.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

105.    The Removing Defendants and Sales Representatives Defendants made express representations to the consuming public at large through their aggressive marketing and

advertising campaigns relative to their product, Bextra.

106.    The Removing Defendants through their detail sales representatives, including Sales Representatives Defendants, made representations of the safety and efficacy of their product, Bextra.

107.    Bextra does not conform to the express representations made through the Defendants' advertising and marketing efforts

108.    Bextra does not conform to the express representations made by Sales Representatives Defendants.

109.    Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff.·

110.    Wherefore, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

<div align="center">

FIFTH CAUSE OF ACTION
BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

</div>

111.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

112.    Defendant is a "merchant" as defined in *Mississippi Code Annotated Uniform Commercial Code* § 75-2-104.

113.    Bextra (Valdecoxib) is a "good" as defined *Code Annotated Uniform Commercial Code* § 75-2-105.

114.    At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valdecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

115.   CAROLYN MONTIFORTE, in ingesting Bextra (Valdecoxib), reasonably relied upon the skill and judgment of Defendants as to whether Bextra (Valdecoxib) was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

116.   In breach of the implied warranty given by Defendants, Bextra (Valdecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is un-merchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

117.   In breach of the implied warranty given by Defendants, Bextra (Valdecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

> a.   Use of Bextra (Valdecoxib) carried a risk of, among other things, heart attack, stroke and/or death and other serious and life threatening side effects;

> b.   Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, of the potential risks and serious side effects of the drug;

> c.   Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

118.   As a direct, legal, proximate and producing result of Defendants' breach of warranty, CAROLYN MONTIFORTE sustained substantial injuries including, among other things, heart attack.  These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced CAROLYN MONTIFORTE's ability to enjoy life.  In

addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

119. As a direct, legal, proximate and producing result of Defendants' breach of warranty, CAROLYN MONTIFORTE has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

120. As a direct, legal, proximate and producing result of Defendants' breach of warranty, CAROLYN MONTIFORTE required reasonable and necessary health care treatment and services and had incurred expenses therefore.

121. As a result of Defendant's breach of warranty, Plaintiff has suffered and will continue to suffer.

122. By reason of the foregoing, CAROLYN MONTIFORTE has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

<div align="center">

SIXTH CAUSE OF ACTION
FRAUD

</div>

123. Plaintiff repeats and realleges each of the allegations contained in the Complaint.

124. Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valdecoxib).

125. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, with the intent that they reach users and/or consumers of the drug, including CAROLYN MONTIFORTE.

126. Defendants either knew or should have known that the representations were false.

127. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, would rely on such in selecting Bextra (Valdecoxib) as a pain reliever.

128. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valdecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

129. Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

a. There had been insufficient studies regarding the safety and efficacy of the drug;

b. The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

c. Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including,

26

but not limited to, adverse cardiovascular events and/or Stevens-Johnson Syndrome/toxic epidermal necrolysis;

        d.      Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

        c.      Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Bextra (Valdecoxib); yet, despite this they were downplaying the risk of the drug.

130.    The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

131.    The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.  Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Bextra (Valdecoxib).  Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valdecoxib) in a timely manner, yet they failed to provide such warning.

132.    CAROLYN MONTIFORTE justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valdecoxib) to her detriment.

133.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, CAROLYN MONTIFORTE sustained substantial injuries including, among other things, heart attack.  These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced CAROLYN MONTIFORTE' ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

134.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, CAROLYN MONTIFORTE has been injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused CAROLYN MONTIFORTE intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

135.    As a result of Defendant's fraud, Plaintiff has suffered and will continue to suffer.

136.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, CAROLYN MONTIFORTE required reasonable and necessary health care treatment and service and had incurred expenses therefore.

137.    By reason of the foregoing, CAROLYN MONTIFORTE has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

138.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

139.    Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including CAROLYN MONTIFORTE, material, adverse information regarding the safety and efficacy of Bextra (Valdecoxib).

140.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

141.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valdecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

142.    Defendants either knew or should have known that the representations were false.

143.    Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Bextra (Valdecoxib) as a pain reliever.

144.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

    a.    There had been insufficient studies regarding the safety and efficacy of the drug;

    b.    The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

    c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions and strokes;

d. Defendants knew or should have known of reports of heart attacks associated with the use of the drug;

e. Defendants knew or should have known of the greatly increased risk of heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

145. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by the Removing Defendants, their sales representatives, employees, distributors, agents and/or detail persons, including the Sales Representatives Defendants.

146. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and complications associated with Bextra (Valdecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valdecoxib) in a timely manner, yet it failed to provide such warning.

147. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valdecoxib) to her detriment.

148. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained harm, including, among other things, heart attack. These injuries have caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

149. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, CAROLYN MONTIFORTE was injured in health, strength and activity and

suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

150. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, CAROLYN MONTIFORTE required reasonable and necessary health care treatment and service and had incurred expenses therefore.

151. As a result of the misrepresentations of the Defendants, Plaintiff has suffered and will continue to suffer.

152. By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

<div align="center">CAUSE OF ACTION</div>

153. Defendants' aforementioned conduct was negligent, defective in the design, failed to warn of safety risks, breached the express warranty of merchantability, breached the implied warranty of merchantability, was fraudulent, and misrepresented the safety and efficacy of the drug.

154. Defendant's aforementioned conduct constitutes negligence per se.

<div align="center">DAMAGES</div>

155. The injuries and damages suffered by CAROLYN MONTIFORTE include, but are not limited to the following: medical expenses, pain and suffering, loss of enjoyment of life, and mental anguish.

156. The Plaintiff is entitled to punitive damages for the willful, wanton, intentional, reckless and malicious acts of the Defendants. Further, the acts of the Defendants constitute gross negligence.

<div align="center">PRAYER FOR RELIEF</div>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited

to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

Dated: June 12, 2007

NAVAN WARD, JR. (MSB No. 100921)

**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

**COVER SHEET**
**Civil Case Filing Form**
*(To be completed by Attorney/Party*
*Prior to Filing of Pleading)*

Mississippi Supreme Court
Administrative Office of Courts

Form AOC/01
(Revised 1/1/2001)



Court Identification
Docket Number

R / / @ /
County # | Judicial | Court ID
| District | (CH, CI, CO)

Ø 6 / 1 3 Ø 7
Month | Date | Year

This area to be completed by clerk



Case Year: 2 0 0 7

Docket Number: 0 0 2 1 4

Local Docket ID

Case Number if filed prior to 1/1/94

IN THE ___CIRCUIT___ COURT OF ___HARRISON___ COUNTY

Short Style of Case: ___Carolyn Montiforte v. Pfizer Inc. et al.___

Party Filing Initial Pleading: Type/Print Name ___Navan Ward, Jr.___     MS Bar No. ___100921___
___ Check (✓) if Not an Attorney     ___ Check (✓) if Pro Hac Vice     Signature ___Navan Ward Jr.___

Compensatory Damages Sought: $ ___     Punitive Damages Sought: $ ___

***Is Child Support contemplated as an issue in this suit?*** ___Yes  ✓ No     If "yes" is checked, please submit a completed Child Support Information Sheet with Final Decree/Judgment

PLAINTIFF - PARTY(IES) INITIALLY BRINGING SUIT SHOULD BE ENTERED FIRST (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL PLAINTIFFS ON SEPARATE FORM

Individual ___Montiforte___  ___Carolyn___  (___)
Last Name | First Name | Maiden Name, if Applicable | Middle Init. | Jr/Sr/III/IV

Address of Plaintiff ___25531 Ramsey Road Saucier, Mississippi 39574___
___ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___
___ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A / Agency ___
Business ___
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated
___ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A: ___

DEFENDANT - NAME OF DEFENDANT (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL DEFENDANTS ON SEPARATE FORM

Individual ___  ___  (___)
Last Name | First Name | Maiden Name, if Applicable | Middle Init. | Jr/Sr/III/IV

___ Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___
___ Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A / Agency ___
Business ___
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated
✓ Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:
D/B/A ___Pfizer Inc.___

ATTORNEY FOR THIS DEFENDANT: ___ Bar No. ___ or Name: ___     Pro Hac Vice (✓) ___
(If shown)

*In left hand column, check one (1) box that best describes the nature of this suit. In right hand column check all boxes which indicate secondary claims.*

**Business/Commercial**
- Accounting (Business)
- Bankruptcy
- Business Dissolution - Corporation
- Business Dissolution - Partnership
- Debt Collection
- Employment
- Examination of Debtor
- Execution
- Foreign Judgment
- Garnishment
- Pension
- Receivership
- Replevin
- Stockholder Suit
- Other

**Domestic Relations**
- Child Custody/Visitation
- Child Support
- Contempt
- Divorce: Fault
- Divorce: Irreconcilable Differences
- Domestic Abuse
- Emancipation
- Modification
- Paternity
- Property Division
- Separate Maintenance
- Termination of Parental Rights
- UIFSA (formerly URESA)
- Other

**Contract**
- Breach of Contract
- Installment Contract
- Insurance
- Product Liability under Contract
- Specific Performance
- Other

**Probate**
- Accounting (Probate)
- Birth Certificate Correction
- Commitment
- Conservatorship
- Guardianship
- Heirship
- Intestate Estate
- Minor's Settlement
- Muniment of Title
- Name Change
- Power of Attorney
- Testate Estate
- Will Contest
- Other

**Statutes/Rules**
- Bond Validation
- Civil Forfeiture
- Declaratory Judgment
- ERISA
- Eminent Domain
- Extraordinary Writ
- Federal Statutes
- Injunction or Restraining Order
- Municipal Annexation
- Racketeering (RICO)
- Railroad
- Seaman
- Other

**Appeals**
- Administrative Agency
- County Court
- Hardship Petition (Driver License)
- Justice Court
- MS Employment Security Comm'n
- Municipal Court
- Oil & Gas Board
- Workers' Compensation
- Other

**Children and Minors - Non-Domestic**
- Adoption - Noncontested
- Consent to Abortion for Minor
- Removal of Minority
- Other

**Torts-Personal Injury**
- Bad Faith
- Fraud
- Loss of Consortium
- Malpractice - Legal
- Malpractice - Medical
- Negligence - General
- Negligence - Motor Vehicle
- ✓ Products Liability
- Wrongful Death
- Other

**Mass Tort**
- Asbestos
- Chemical Spill
- Dioxin
- Hand/Arm Vibration
- Hearing Loss
- Radioactive Materials
- Other

**Real Property**
- Adverse Possession
- Ejectment
- Eminent Domain
- Judicial Foreclosure
- Lien Assertion
- Partition
- Receiver Appointment
- Tax Sale: Confirmation/Cancellation
- Title, Boundary &/or Easement
- Other

**Civil Rights**
- Elections
- Habeas Corpus
- Post Conviction Relief
- Prisoner
- Other

IN THE <u>CIRCUIT</u> COURT OF <u>HARRISON</u> COUNTY, MISSISSIPPI

<u>1st</u> JUDICIAL DISTRICT, CITY OF <u>Gulfport</u>

Docket No. <u>2007  214</u>
      File Yr      Chronological No.      Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

**PLAINTIFFS IN REFERENCED CAUSE - Page 1 of ___ Plaintiffs Pages**
**IN ADDITION TO PLAINTIFF SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Plaintiff #2:**

**Individual:** _____
           Last Name           First Name      (  Maiden Name, if Applicable  )  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS PLAINTIFF:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Plaintiff #3:**

**Individual:** _____
           Last Name           First Name      (  Maiden Name, if Applicable  )  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS PLAINTIFF:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Plaintiff #4:**

**Individual:** _____
           Last Name           First Name      (  Maiden Name, if Applicable  )  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS PLAINTIFF:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

IN THE <u>CIRCUIT</u> COURT OF <u>HARRISON</u> COUNTY, MISSISSIPPI

<u>                    </u> JUDICIAL DISTRICT, CITY OF <u>                    </u>

Docket No. <u>2007  214</u>

<span style="font-size:small">File Yr    Chronological No.    Clerk's Local ID</span>

Docket No. If Filed
Prior to 1/1/94 <u>                    </u>

**DEFENDANTS IN REFERENCED CAUSE - Page 1 of __ Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

### Defendant #2:

**Individual:** <u>                    </u> <u>                    </u> ( <u>                    </u> ) <u>        </u> <u>        </u>
    Last Name      First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of <u>                    </u>

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A <u>                    </u>

**Business** <u>                    </u>
    <span style="font-size:small">Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated</span>

✓ Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

    D/B/A <u>G.D. Searle LLC</u>

**ATTORNEY FOR THIS DEFENDANT:** <u>        </u> Bar # or Name: <u>                    </u> *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

### Defendant #3:

**Individual:** <u>                    </u> <u>                    </u> ( <u>                    </u> ) <u>        </u> <u>        </u>
    Last Name      First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of <u>                    </u>

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A <u>                    </u>

**Business** <u>                    </u>
    <span style="font-size:small">Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated</span>

✓ Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

    D/B/A <u>Pharmacia Corporation</u>

**ATTORNEY FOR THIS DEFENDANT:** <u>        </u> Bar # or Name: <u>                    </u> *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

### Defendant #4:

**Individual:** <u>                    </u> <u>                    </u> ( <u>                    </u> ) <u>        </u> <u>        </u>
    Last Name      First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of <u>                    </u>

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A <u>                    </u>

**Business** <u>                    </u>
    <span style="font-size:small">Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated</span>

✓ Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

    D/B/A <u>Monsanto Company</u>

**ATTORNEY FOR THIS DEFENDANT:** <u>        </u> Bar # or Name: <u>                    </u> *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

IN THE <u>CIRCUIT</u> COURT OF <u>HARRISON</u> COUNTY, MISSISSIPPI

_____ JUDICIAL DISTRICT, CITY OF _____

Docket No. <u>2007</u> - <u>214</u> _____
    File Yr      Chronological No.      Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

**DEFENDANTS IN REFERENCED CAUSE - Page ___ of ____ Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Defendant # 5 :**

**Individual:** <u>Amant</u>     <u>Lance</u>     ( _____ )   <u>St.</u>
        Last Name        First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # 6 :**

**Individual:** <u>Nowell</u>     <u>Rita</u>     ( _____ )
        Last Name        First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # 7 :**

**Individual:** <u>Ransom</u>     <u>Christine</u>     ( _____ )
        Last Name        First Name      Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
      Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI

JUDICIAL DISTRICT, CITY OF _____

Docket No. _2007-214_

   File Yr       Chronological No.       Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

**DEFENDANTS IN REFERENCED CAUSE - Page ___ of ___ Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Defendant # 8 :**

**Individual:** Rumsey _____ Mickey _____ ( _____ ) _____ _____
        Last Name         First Name       Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
        Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

**Individual:** _____ _____ ( _____ ) _____ _____
        Last Name         First Name       Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
        Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

**Individual:** _____ _____ ( _____ ) _____ _____
        Last Name         First Name       Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

    D/B/A _____

**Business** _____
        Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

    D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___



CT
a Wolters Kluwer business

CT
645 Lakeland East Drive
Suite 101
Flowood, MS 39232

601 936 7400 tel
601 932 4527 fax
www.ctlegalsolutions.com

July 02, 2007

Navan Ward, Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
PO Box 4160,
Montgomery, AL 36103-4160

Re: Carolyn Montiforte, Individually, Pltf. vs. Pfizer, Inc. et al. including Lance St. Amant c/o Pfizer, Inc., Dfts.
Case No. A2401-07-214

Dear Sir/Madam:

We are herewith returning the Summons, Complaint which we received regarding the above captioned matter.

Please be advised that CT Corporation System does not serve as registered agent for any individual, and therefore cannot accept process directed in this manner. Neither can CT accept process directed to an individual in care of a company for which we furnish the statutory agent.

Accordingly, we are returning the document for further disposition

Very truly yours,

Joanie Sours

Joanie Sours

Log# 512365380

cc: Harrison County Circuit Court, First Judicial
P.O. Box 998,
Gulfport, MS 39502

FILED
JUL 0 5 2007
GAYLE PARKER
CIRCUIT CLERK
By _____ D.C.

# IN THE CIRCUIT COURT OF
## HARRISON COUNTY, MISSISSIPPI

|  |  |  |
|---|---|---|
| CAROLYN MONTIFORTE, individually | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL NO: *A2401-07-214* |
| | * | |
| PFIZER, INC., | * | |
| PHARMACIA CORPORATION, | * | |
| G. D. SEARLE, LLC. | * | |
| MONSANTO COMPANY; | * | |
| LANCE ST. AMANT, RITA NOWELL, | * | |
| CHRISTINE RANSOM, | * | |
| MICKEY RUMSEY | * | |
| | * | |
| Defendants. | * | |
| | * | |

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**     LANCE ST. AMANT
c/o PFIZER, INC.
CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

UNITED STATES POSTAGE
$ 06.610
02 1A
0004603457   JUN 27 2007
MAILED FROM ZIP CODE 36104
PITNEY BOWES



ASLEY, ALLEN, CROW, METHVIN, J
*Attorneys at Law*
POST OFFICE BOX 4160
MONTGOMERY, ALABAMA 3'
Address Service Reques

7160 3701 9849 2476 6636

RETURN RECEIPT REQUESTED

LANCE ST. AMANT
c/o PFIZER, INC. CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232





**CT**
645 Lakeland East Drive
Suite 101
Flowood, MS 39232

6··· ··6 7400 tel
601 932 4527 fax
www.ctlegalsolutions.com

July 02, 2007

Navan Ward, Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
PO Box 4160,
Montgomery, AL 36103-4160

Re: Carolyn Montiforte, Individually, Pltf. vs. Pfizer, Inc. et al. including Christine Ransom c/o Pfizer, Inc.,
Dfts.
Case No. A2401-07-214

Dear Sir/Madam:

We are herewith returning the Summons, Complaint which we received regarding the above captioned matter.

Please be advised that CT Corporation System does not serve as registered agent for any individual, and
therefore cannot accept process directed in this manner. Neither can CT accept process directed to an
individual in care of a company for which we furnish the statutory agent.

Accordingly, we are returning the document for further disposition

Very truly yours,

Joanie Sours

Joanie Sours

**FILED**
JUL 0 5 2007

GAYLE PARKER
CIRCUIT CLERK
By _____ D.C.

Log# 512365380

cc: Harrison County Circuit Court, First Judicial
P.O. Box 998,
Gulfport, MS 39502

**IN THE CIRCUIT COURT OF**
**HARRISON COUNTY, MISSISSIPPI**

|  |  |  |
|---|---|---|
| CAROLYN MONTIFORTE, individually | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL NO: *A24a-07-214* |
| | * | |
| PFIZER, INC., | * | |
| PHARMACIA CORPORATION, | * | |
| G. D. SEARLE, LLC. | * | |
| MONSANTO COMPANY; | * | |
| LANCE ST. AMANT, RITA NOWELL, | * | |
| CHRISTINE RANSOM, | * | |
| MICKEY RUMSEY | * | |
| | * | |
| Defendants. | * | |
| | * | |

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

> **NOTICE TO:**      CHRISTINE RANSOM
> c/o PFIZER, INC.
> CT Corporation System
> 645 Lakeland East Drive
> Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

> **NAVAN WARD, JR.**
> **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
> **Post Office Box 4160**
> **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT

$ 06.610
JUN 27 2007
02 1A
0004603457
MAILED FROM ZIP CODE 36104
PITNEY BOWES
UNITED STATES POSTAGE

7160 3901 9849 2976 6784

RETURN RECEIPT REQUESTED

EASLEY, ALLEN, CROW, M
*Atton*
POST OFF
MONTGOMERY, /
Address Se

10363370

**CHRISTINE RANSOM**
c/o **PFIZER, INC. CT Corporation System**
**645 Lakeland East Drive**
**Flowood, Mississippi 39232**



**IN THE CIRCUIT COURT OF**
**HARRISON COUNTY, MISSISSIPPI**

|  |  |
|---|---|
| CAROLYN MONTIFORTE, individually | * <br> * <br> * <br> * <br> * |
| Plaintiff, | * <br> * <br> * |
| vs. | * <br> * <br> * |
| PFIZER, INC., <br> PHARMACIA CORPORATION, <br> G. D. SEARLE, LLC. <br> MONSANTO COMPANY; <br> LANCE ST. AMANT, RITA NOWELL, <br> CHRISTINE RANSOM, <br> MICKEY RUMSEY | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Defendants. | * <br> * <br> * |

CIVIL NO: A2401-07-214

COPY

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**    LANCE ST. AMANT
c/o PFIZER, INC.
CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_____
Circuit Clerk

DATED: _6/13/07_

IN THE CIRCUIT COURT OF
HARRISON COUNTY, MISSISSIPPI

|  |  |
|---|---|
| CAROLYN MONTIFORTE, individually<br><br>Plaintiff,<br><br>vs.<br><br>PFIZER, INC.,<br>PHARMACIA CORPORATION,<br>G. D. SEARLE, LLC.<br>MONSANTO COMPANY;<br>LANCE ST. AMANT, RITA NOWELL,<br>CHRISTINE RANSOM,<br>MICKEY RUMSEY<br><br>Defendants. | CIVIL NO: *A2401-07-214* |

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**　　　G. D. SEARLE, LLC.
　　　　　　　　　　CT Corporation System
　　　　　　　　　　208 South LaSalle Street, Suite 814
　　　　　　　　　　Chicago, Illinois 60604

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

　　　　　　　　　　NAVAN WARD, JR.
　　　　　　　　　　BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
　　　　　　　　　　Post Office Box 4160
　　　　　　　　　　Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED: _6/13/07_

Circuit Clerk

## IN THE CIRCUIT COURT OF
## HARRISON COUNTY, MISSISSIPPI

|  |  |
|---|---|
| CAROLYN MONTIFORTE, individually | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * CIVIL NO: A2401-07-214 |
| | * |
| PFIZER, INC., | * |
| PHARMACIA CORPORATION, | * |
| G. D. SEARLE, LLC. | * |
| MONSANTO COMPANY; | * |
| LANCE ST. AMANT, RITA NOWELL, | * |
| CHRISTINE RANSOM, | * |
| MICKEY RUMSEY | * |
| | * |
| Defendants. | * |

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**     RITA NOWELL
2516 Linwood Drive
Biloxi, MS 39531-2810

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your
Answer with the Clerk of this Court within a reasonable time afterward.

DATED: 6/13/07

Circuit Clerk

Case 4:07-cv-00735-CR-BM  Document 3-3  Filed 09/22/2007  Page 55 of 83

# IN THE CIRCUIT COURT OF
## HARRISON COUNTY, MISSISSIPPI

|  |  |  |
|---|---|---|

CAROLYN MONTIFORTE, individually  *

Plaintiff,  *

vs.  *  CIVIL NO: _A2401-07-214_

PFIZER, INC.,  *
PHARMACIA CORPORATION,  *
G. D. SEARLE, LLC.  *
MONSANTO COMPANY;  *
LANCE ST. AMANT, RITA NOWELL,  *
CHRISTINE RANSOM,  *
MICKEY RUMSEY  *

Defendants.  *

COPY

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**    CHRISTINE RANSOM
c/o PFIZER, INC.
CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT

BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED: 6/3/07

Circuit Clerk

## IN THE CIRCUIT COURT OF
## HARRISON COUNTY, MISSISSIPPI

|  |  |
|---|---|
| CAROLYN MONTIFORTE, individually | * |
|  | * |
| Plaintiff, | * |
|  | * |
| vs. | * CIVIL NO: *A 2401-07-214* |
|  | * |
| PFIZER, INC., | * |
| PHARMACIA CORPORATION, | * |
| G. D. SEARLE, LLC. | * |
| MONSANTO COMPANY; | * |
| LANCE ST. AMANT, RITA NOWELL, | * |
| CHRISTINE RANSOM, | * |
| MICKEY RUMSEY | * |
|  | * |
| Defendants. | * |

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**      MONSANTO COMPANY
Corporation Service Company
506 South President Street
Jackson, Mississippi 39201

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

       **NAVAN WARD, JR.**
       **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
       **Post Office Box 4160**
       **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_____
Circuit Clerk

DATED: _6/13/07_

IN THE CIRCUIT COURT OF
HARRISON COUNTY, MISSISSIPPI

|  |  |  |
|---|---|---|
| **CAROLYN MONTIFORTE, individually** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL NO: *A2401-07-214* |
| | * | |
| **PFIZER, INC.,** | * | |
| **PHARMACIA CORPORATION,** | * | |
| **G. D. SEARLE, LLC.** | * | |
| **MONSANTO COMPANY;** | * | |
| **LANCE ST. AMANT, RITA NOWELL,** | * | |
| **CHRISTINE RANSOM,** | * | |
| **MICKEY RUMSEY** | * | |
| | * | |
| Defendants. | * | |
| | * | |

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**        PFIZER, INC.
CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED: _____6/13/07_____

_____

Circuit Clerk

**IN THE CIRCUIT COURT OF
HARRISON COUNTY, MISSISSIPPI**

|  |  |  |
|---|---|---|
| CAROLYN MONTIFORTE, individually | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL NO: *A2401-07-214* |
| | * | |
| PFIZER, INC., | * | |
| PHARMACIA CORPORATION, | * | |
| G. D. SEARLE, LLC. | * | |
| MONSANTO COMPANY; | * | |
| LANCE ST. AMANT, RITA NOWELL, | * | |
| CHRISTINE RANSOM, | * | |
| MICKEY RUMSEY | * | |
| | * | |
| Defendants. | * | |

<u>SUMMONS</u>

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:** PHARMACIA COPORATION
CT Corporation System
645 Lakeland East Drive
Flowood, Mississippi 39232

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_____

Circuit Clerk

DATED: _6/13/07_

# IN THE CIRCUIT COURT OF
# HARRISON COUNTY, MISSISSIPPI

|  |  |
|---|---|
| **CAROLYN MONTIFORTE, individually**<br><br>**Plaintiff,**<br><br>vs.<br><br>**PFIZER, INC.,**<br>**PHARMACIA CORPORATION,**<br>**G. D. SEARLE, LLC.**<br>**MONSANTO COMPANY;**<br>**LANCE ST. AMANT, RITA NOWELL,**<br>**CHRISTINE RANSOM,**<br>**MICKEY RUMSEY**<br><br>**Defendants.** | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

CIVIL NO: _A 2401-07-214_

COPY

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**     MICKEY RUMSEY
808 Woodglen Drive
Ocean Springs, MS 39564-8213

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights.  You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**NAVAN WARD, JR.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
**Post Office Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs.  THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER

THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_____
Circuit Clerk

DATED: ___6/13/07___

# Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

| | | *Attorneys at Law* | | |
|---|---|---|---|---|
| JERE LOCKE BEASLEY | JOSEPH H. AUGHTMAN | | LARRY A. GOLSTON, JR. ᵛ ᵡ | † ALSO ADMITTED IN ARIZONA |
| J. GREG ALLEN | DANA G. TAUNTON | 218 COMMERCE STREET | D. MICHAEL ANDREWS | □ ALSO ADMITTED IN ARKANSAS |
| MICHAEL J. CROW | J. MARK ENGLEHART · | POST OFFICE BOX 4160 | MELISSA A. PRICKETT | ▼ ALSO ADMITTED IN FLORIDA |
| THOMAS J. METHVIN | CLINTON C. CARTER ᴼ·· | MONTGOMERY, ALABAMA | JOHN E. TOMLINSON | ▲ ALSO ADMITTED IN GEORGIA |
| J. COLE PORTIS | BENJAMIN E. BAKER, JR. ᴾᶻᴬᵛᴮ | 36103-4160 | KIMBERLY R. WARD · | ⋆ ALSO ADMITTED IN MINNESOTA |
| W. DANIEL MILES, III | DAVID B. BYRNE, III | (334) 269-2343 | NAVAN WARD, JR. · | ◆ ALSO ADMITTED IN MISSISSIPPI |
| R. GRAHAM ESDALE, JR. | TED G. MEADOWS ··ᶻ·ᵛ | | WESLEY CHADWICK COOK | ⊕ ALSO ADMITTED IN NEW YORK |
| JULIA ANNE BEASLEY | GERALD B. TAYLOR, JR. ᵛ·· | TOLL FREE | | ʳ ALSO ADMITTED IN OHIO |
| RHON E. JONES | FRANK WOODSON | (800) 898-2034 | | ◊ ALSO ADMITTED IN OKLAHOMA |
| LABARRON N. BOONE | KENDALL C. DUNSON · | | | ▲ ALSO ADMITTED IN SOUTH CAROLINA |
| ANDY D. BIRCHFIELD, JR. | J. PAUL SIZEMORE·· | TELECOPIER | OF COUNSEL: | ● ALSO ADMITTED IN TENNESSEE |
| RICHARD D. MORRISON · | SCARLETTE M. TULEY | (334) 954-7555 | BENJAMIN L. LOCKLAR | # ALSO ADMITTED IN TEXAS |
| C. GIBSON VANCE | CHRISTOPHER E. SANSPREE · | | P. LEIGH O'DELL | Σ ALSO ADMITTED IN WASHINGTON, D.C. |
| J. P. SAWYER ·· | ROMAN ASHLEY SHAUL ᴼ··ᵛ | BEASLEYALLEN.COM | | ᵛ ALSO ADMITTED IN WEST VIRGINIA |
| C. LANCE GOULD | W. ROGER SMITH, III ·ᵗ··ᵛ | | | |

JAMES W. TRAEGER
1953-1987

RONALD AUSTIN CANTY
1965-2004

July 5, 2007

Civil Circuit Clerk
Harrison County Courthouse
1801 23rd Ave
Gulfport, MS 39501-2964

    *Re:*    *Montiforte, Carolyn v. Pfizer, Inc. et al. (A2401-04-214)*

To Whom It May Concern:

    Please find the proof of service for Mickey Rumsey, Pharmacia Corporation, Pfizer, Inc., Christine Ransom, Lance St. Amant, and Rita Nowell. Please file accordingly. We are waiting on the return of G.D. Searle LLC and Monsanto Company and once received, we will submit immediately.

    If there are any questions or concerns please contact me at 1-800-898-2034, ext. 472.

                  Sincerely,

                  BEASLEY, ALLEN, CROW, METHVIN,
                  PORTIS & MILES, P.C.

                  *Angela R. Upton*

                  Angela R. Upton
                  Legal Assistant to Navan Ward, Jr.

Enclosures

FILED
JUL 10 2007
GAYLE PARKER
CIRCUIT CLERK
By _____ D.C.



UNITED STATES POSTAL SERVICE

JACKSON MS

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**BEASLEY ALLEN CROW METHVIN**
**PORTIS & MILES**
**PO BOX 4160**
**MONTGOMERY AL 36103-4160**

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE



UNITED STATES POSTAL SERVICE

JACKSON MS

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**BEASLEY ALLEN CROW METHVIN**
**PORTIS & MILES**
**PO BOX 4160**
**MONTGOMERY AL 36103-4160**

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE

**COMPLETE THIS SECTION ON DELIVERY**

Received by (Please Print Clearly): Jones   B. Date of Delivery: 7/2

C. Signature

X

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

7160 3901 9849 2976 6814

3. Service Type   **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:

**PHARMACIA COPORATION**

**CT Corporation System**

**645 Lakeland East Drive**

**Flowood, Mississippi 39232**

PS Form 3811, January 2005          Domestic Return Receipt

---

2. Article Number

**COMPLETE THIS SECTION ON DELIVERY**

Received by (Please Print Clearly): Jones   B. Date of Delivery: 7/2

X

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

7160 3901 9849 2976 6838

3. Service Type   **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:

**LANCE ST. AMANT**

**c/o PFIZER, INC. CT Corporation System**

**645 Lakeland East Drive**

**Flowood, Mississippi 39232**

PS Form 3811, January 2005          Domestic Return Receipt



UNITED STATES POSTAL SERVICE

JACKSON M   39

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

BEASLEY ALLEN CROW METHVIN
PORTIS & MILES
PO BOX 4160
MONTGOMERY AL 36103-4160

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE



UNITED STATES POSTAL SERVICE

JACKSON MS   92

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

BEASLEY ALLEN CROW METHVIN
PORTIS & MILES
PO BOX 4160
MONTGOMERY AL 36103-4160

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE

**2. Article Number**

7160 3901 9849 2976 6807

COMPLETE THIS SECTION ON DELIVERY

Received by (Please Print Clearly) | B. Date of Delivery
Jones | 7/2

C. Signature
X

☐ Agent
☐ Addressee

D. Is delivery address different from Item 1?
If YES, enter delivery address below:

☐ Yes
☐ No

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery? (Extra Fee)** ☐ Yes

**1. Article Addressed to:**

**PFIZER, INC.**
**CT Corporation System**
**645 Lakeland East Drive**
**Flowood, Mississippi 39232**

PS Form 3811, January 2005          Domestic Return Receipt

---

**2. Article Number**

7160 3901 9849 2976 6784

COMPLETE THIS SECTION ON DELIVERY

Received by (Please Print Clearly) | B. Date of Delivery
Jones | 7/2

C. Signature
X

☐ Agent
☐ Addressee

D. Is delivery address different from Item 1?
If YES, enter delivery address below:

☐ Yes
☐ No

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery? (Extra Fee)** ☐ Yes

**1. Article Addressed to:**

**CHRISTINE RANSOM**
**c/o PFIZER, INC. CT Corporation System**
**645 Lakeland East Drive**
**Flowood, Mississippi 39232**

PS Form 3811, January 2005          Domestic Return Receipt



UNITED STATES POSTAL SERVICE

GULFPORT MS

30 JUN 2007 PM 2 L

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

**BEASLEY ALLEN CROW METHVIN**
**PORTIS & MILES**
**PO BOX 4160**
**MONTGOMERY AL 36103-4160**

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE



UNITED STATES POSTAL SERVICE

GULFPORT MS

02 JUL 2007 PM 2 L

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

**BEASLEY ALLEN CROW METHVIN**
**PORTIS & MILES**
**PO BOX 4160**
**MONTGOMERY AL 36103-4160**

ATTN: MASS TORTS/ANGELA UPTON

MONTIFORTE SERVICE

**2. Article Number**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

7160 3901 9849 1052 2672

**COMPLETE THIS SECTION ON DELIVERY**

Received by (Please Print Clearly) — Ben Nowell

B. Date of Delivery — 6/29/07

C. Signature

X Ben Nowell

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?
If YES, enter delivery address below:

☐ Yes
☐ No

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery?** *(Extra Fee)*   ☐ Yes

**1. Article Addressed to:**

**RITA NOWELL**
**2516 Linwood Drive**
**Biloxi, MS 39531-2810**

PS Form 3811, January 2005          Domestic Return Receipt

---

**2. Article Number**



‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

7160 3901 9849 2976 6906

**COMPLETE THIS SECTION ON DELIVERY**

Received by (Please Print Clearly) — LAWRENCE G Rumsey

B. Date of Delivery — 7-02-07

C. Signature

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?
If YES, enter delivery address below:

☐ Yes
☐ No

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery?** *(Extra Fee)*   ☐ Yes

**1. Article Addressed to:**

**MICKEY RUMSEY**
**808 Woodglen Drive**
**Ocean Springs, MS 39564-8213**

PS Form 3811, January 2005          Domestic Return Receipt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

CAROLYN MONTIFORTE                                                      PLAINTIFF

v.                                                         CIVIL ACTION NO. _____

PFIZER, INC., G.D. SEARLE, LLC, a subsidiary of
PHARMACIA CORPORATION,
a Foreign Corporation;
MONSANTO COMPANY;
LANCE ST. AMANT, RITA NOWELL,
CHRISTINE RANSOM, MICKEY RUMSEY,
and fictitious Defendants A, B, C and D
being those persons, firms or
corporations whose actions, inactions,
fraudulent suppression, fraud, scheme to
defraud and/or wrongful conduct caused
or contributed to the Plaintiff's injuries and
damages, and whose true names and identities
are presently unknown to the Plaintiff but will
be substituted by amendment when
ascertained.                                                           DEFENDANTS


### AFFIDAVIT OF LANCE ST. AMANT

Lance St. Amant, being duly sworn, deposes and says:

1.      I am Lance St. Amant and I currently reside in Mississippi. I have personal

knowledge of the matters stated herein, and I am competent to make this affidavit.

2.      I am employed by Pfizer Inc. ("Pfizer") as a Pharmaceutical Representative. I was

originally employed by G.D. Searle LLC in 1997, but I subsequently became employed by

Pharmacia Corporation ("Pharmacia"). At some time during my employment with Pharmacia,

Pfizer acquired Pharmacia.



**EXHIBIT**

B

3.      At all relevant times, I acted only in the ordinary course and scope of my employment as a Pharmaceutical Representative with respect to Bextra®.

4.      As a Pharmaceutical Representative, I visit physicians and healthcare providers' offices and provide them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job is to make the physician aware of certain of Pfizer's products, so that he/she can consider whether to prescribe them for particular patients.

5.      I am not a physician or pharmacist. The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.      As part of my job duties, I detailed Bextra_. However, I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician because plaintiff has not identified him/her.

7.      At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra®, nor did I have any involvement in the FDA-approved package insert for Bextra®.

8.      At no time did I sell, offer to sell, or take orders for the sale of Bextra® to healthcare providers, physicians, or patients.

9.      I have never made any representations to the general public concerning Bextra®.

10.      I have never met or spoken with the plaintiff, Carolyn Montiforte, and I have

never sold or given Bextra® to Carolyn Montiforte.

FURTHER AFFIANT SAITH NOT.

This _20th_ day of July, 2007.

_____
LANCE ST. AMANT

STATE OF MISSISSIPPI

COUNTY OF _Jackson_

PERSONALLY APPEARED BEFORE ME the undersigned authority in and for the state

and county above, LANCE ST. AMANT, who, after being duly sworn, stated on oath that the

above statements are true and correct to the best of his knowledge.

SWORN TO AND SUBSCRIBED BEFORE ME, this the _20_ day of July, 2007.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

My Commission Expires: July 17, 2010

_____

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

CAROLYN MONTIFORTE                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. _____

PFIZER, INC., G.D. SEARLE, LLC, a subsidiary of
PHARMACIA CORPORATION,
a Foreign Corporation;
MONSANTO COMPANY;
LANCE ST. AMANT, RITA NOWELL,
CHRISTINE RANSOM, MICKEY RUMSEY,
and fictitious Defendants A, B, C and D
being those persons, firms or
corporations whose actions, inactions,
fraudulent suppression, fraud, scheme to
defraud and/or wrongful conduct caused
or contributed to the Plaintiff's injuries and
damages, and whose true names and identities
are presently unknown to the Plaintiff but will
be substituted by amendment when
ascertained.                                                        DEFENDANTS

### AFFIDAVIT OF MICKEY RUMSEY

Mickey Rumsey, being duly sworn, deposes and says:

1.      I am Mickey Rumsey and I currently reside in Mississippi.  I have personal

knowledge of the matters stated herein, and I am competent to make this affidavit.

2.      I was formerly employed by Pfizer Inc. ("Pfizer") as a Pharmaceutical

Representative until approximately May of 2003.

3.      At all relevant times, I acted only in the ordinary course and scope of my

employment as a Pharmaceutical Representative with respect to Bextra®.

4.      As a Pharmaceutical Representative, I visited physicians and healthcare

providers' offices and provided them FDA-approved package inserts and other FDA-approved

information about Pfizer's products, which is referred to as "detailing." My job was to make the physician aware of certain of Pfizer's products, so that he/she can consider whether to prescribe them for particular patients.

5.      I am not a physician or pharmacist. The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other FDA-approved information for the medications I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.      As part of my job duties, I detailed Bextra®. However, I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician because plaintiff has not identified him/her.

7.      At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra®, nor did I have any involvement in the FDA-approved package insert for Bextra®.

8.      At no time did I sell, offer to sell, or take orders for the sale of Bextra® to healthcare providers, physicians, or patients.

9.      I have never made any representations to the general public concerning Bextra®.

10.     I have never met or spoken with the plaintiff, Carolyn Montiforte, and I have never sold or given Bextra® to Carolyn Montiforte.

FURTHER AFFIANT SAITH NOT.

This _____ day of July, 2007.

2

_____
MICKEY RUMSEY

STATE OF MISSISSIPPI

COUNTY OF _Jackson_

    PERSONALLY APPEARED BEFORE ME the undersigned authority in and for the state

and county above, MICKEY RUMSEY, who, after being duly sworn, stated on oath that the

above statements are true and correct to the best of her knowledge.

    SWORN TO AND SUBSCRIBED BEFORE ME, this the _20_ day of July, 2007.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

_10/4/08_

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**CAROLYN MONTIFORTE**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. _____**

**PFIZER, INC., G.D. SEARLE, LLC, a subsidiary of**
**PHARMACIA CORPORATION,**
**a Foreign Corporation;**
**MONSANTO COMPANY;**
**LANCE ST. AMANT, RITA NOWELL,**
**CHRISTINE RANSOM, MICKEY RUMSEY,**
**and fictitious Defendants A, B, C and D**
**being those persons, firms or**
**corporations whose actions, inactions,**
**fraudulent suppression, fraud, scheme to**
**defraud and/or wrongful conduct caused**
**or contributed to the Plaintiff's injuries and**
**damages, and whose true names and identities**
**are presently unknown to the Plaintiff but will**
**be substituted by amendment when**
**ascertained.**                                                        **DEFENDANTS**

### AFFIDAVIT OF RITA NOWELL

Rita Nowell, being duly sworn, deposes and says:

1.      I am Rita Nowell and I currently reside in Mississippi.  I have personal knowledge

of the matters stated herein, and I am competent to make this affidavit.

2.      I was formerly employed by Pfizer Inc. ("Pfizer") as a Pharmaceutical

Representative until April of 2003.

3.      At all relevant times, I acted only in the ordinary course and scope of my

employment as a Pharmaceutical Representative with respect to Bextra®.

4.      As a Pharmaceutical Representative, I visited physicians and healthcare

providers' offices and provided them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job was to make the physician aware of certain of Pfizer's products, so that he/she can consider whether to prescribe them for particular patients.

5.      I am not a physician or pharmacist. The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other FDA-approved information for the medications I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.      As part of my job duties, I detailed Bextra®. However, I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician because plaintiff has not identified him/her.

7.      At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra®, nor did I have any involvement in the FDA-approved package insert for Bextra®.

8.      At no time did I sell, offer to sell, or take orders for the sale of Bextra® to healthcare providers, physicians, or patients.

9.      I have never made any representations to the general public concerning Bextra®.

10.     I have never met or spoken with the plaintiff, Carolyn Montiforte, and I have never sold or given Bextra® to Carolyn Montiforte.

FURTHER AFFIANT SAITH NOT.

2

This _18th_ day of July, 2007.

_Rita Nowell_
RITA NOWELL

STATE OF MISSISSIPPI

COUNTY OF _Harrison_

PERSONALLY APPEARED BEFORE ME the undersigned authority in and for the state

and county above, RITA NOWELL, who, after being duly sworn, stated on oath that the above

statements are true and correct to the best of her knowledge.

SWORN TO AND SUBSCRIBED BEFORE ME, this the _18th_ day of July, 2007.

_Sheryl H. Weston_
NOTARY PUBLIC

MY COMMISSION EXPIRES:

My Commission Expires Feb. 20, 2009

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CAROLYN MONTIFORTE**                                                      **PLAINTIFF**

v.                                                      CIVIL ACTION NO. _____

**PFIZER, INC., G.D. SEARLE, LLC, a subsidiary of
PHARMACIA CORPORATION,
a Foreign Corporation;
MONSANTO COMPANY;
LANCE ST. AMANT, RITA NOWELL,
CHRISTINE RANSOM, MICKEY RUMSEY,
and fictitious Defendants A, B, C and D
being those persons, firms or
corporations whose actions, inactions,
fraudulent suppression, fraud, scheme to
defraud and/or wrongful conduct caused
or contributed to the Plaintiff's injuries and
damages, and whose true names and identities
are presently unknown to the Plaintiff but will
be substituted by amendment when
ascertained.**                                                      **DEFENDANTS**

## AFFIDAVIT OF CHRISTINE RANSOM PARENTON

Christine Ransom Parenton, being duly sworn, deposes and says:

1.     I am Christine Ransom Parenton and I currently reside in Louisiana.  I have been

a resident and citizen of Louisiana since September of 2006.  I am not a resident of Mississippi.

I have personal knowledge of the matters stated herein, and I am competent to make this

affidavit.

2.     I was formerly employed by Pfizer Inc. ("Pfizer") as a Pharmaceutical

Representative until September of 2006.

3.     At all relevant times, I acted only in the ordinary course and scope of my

employment as a Pharmaceutical Representative with respect to Bextra®.

4.      As a Pharmaceutical Representative, I visited physicians and healthcare providers' offices and provided them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job was to make the physician aware of certain of Pfizer's products, so that he/she can consider whether to prescribe them for particular patients.

5.      I am not a physician or pharmacist. The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other FDA-approved information for the medications I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.      As part of my job duties, I detailed Bextra®. However, I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician because plaintiff has not identified him/her.

7.      At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra®, nor did I have any involvement in the FDA-approved package insert for Bextra®.

8.      At no time did I sell, offer to sell, or take orders for the sale of Bextra® to healthcare providers, physicians, or patients.

9.      I have never made any representations to the general public concerning Bextra®.

10.      I have never met or spoken with the plaintiff, Carolyn Montiforte, and I have never sold or given Bextra® to Carolyn Montiforte.

2

FURTHER AFFIANT SAITH NOT.

This 18th day of July, 2007.

CHRISTINE RANSOM PARENTON

STATE OF LOUISIANA

COUNTY/PARISH OF ORLEANS

PERSONALLY APPEARED BEFORE ME the undersigned authority in and for the state

and county/parish above, CHRISTINE RANSOM PARENTON, who, after being duly sworn,

stated on oath that the above statements are true and correct to the best of her knowledge.

SWORN TO AND SUBSCRIBED BEFORE ME, this the 18th day of July, 2007.

NOTARY PUBLIC

MY COMMISSION EXPIRES:
**Laurie C. Simpson**
**Notary Public, Notary Number 5012**
**Parish of Orleans, State of Louisiana**
**My Commission Expires at Death**

3