Case 4:07-cv-00967-GKF-FHM Document 1-4 Filed 09/14/2007 Page 4 of 52

Case 2:07-cv-00232-WMA    Document 22    Filed 03/07/2007    Page 1 of 15    **FILED**
2007 Mar-07 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM   D.   MCCLUSKEY,   as )
Surviving    Spouse    and   as )
Personal Representative of the )
Estate of Mary L. McMcluskey,  )
                               )
        Plaintiff,             )     CIVIL ACTION NO.
                               )     07-AR-0232-S
v.                             )
                               )
MERCK & CO., INC., a foreign   )
corporation, et al.,           )
                               )
        Defendants.            )

## MEMORANDUM OPINION

Before the court is the motion of plaintiff, William D. McCluskey ("McCluskey"), to remand the above-entitled action to the Circuit Court of Jefferson County, Alabama, from which it was removed by defendant, Merck & Co., Inc. ("Merck"). Also before the court are the respective motions of defendants Cedric Anderson and Anna Leigh Webb to dismiss the action as to them, and the motion of McCluskey to dismiss the action as against defendant James A. Stewart. Finally, the court has for consideration the motions of various defendants to stay all proceedings in this action pending its possible transfer to the United States District Court for the Eastern District of Louisiana for consolidated and coordinated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.* MDL No. 1657, and/or to the United States District Court for the Northern District of California as part of *In re Bextra and Celebrex Marketing, Sales*



EXHIBIT
C

*Practices and Prods. Liab. Litig.*, MDL-1699.  For the reasons that follow, McClusky's motion to remand will be denied, and his motion to dismiss his action against Stewart will be granted.  The court will grant all motions filed by the various defendants.

*Procedural History*

McCluskey, a citizen of the state of Alabama, filed this action in the Circuit Court of Jefferson County on December 13, 2006.  McCluskey asserted various tort and contract claims related to the drugs VIOXX and CELEBREX, the use of which McCluskey says proximately caused the death of his wife, Mary L. McCluskey ("Mary McCluskey").  The corporate defendants named in McCluskey's complaint were Merck, Pfizer, Inc. ("Pfizer"), Pharmacia Corporation ("Pfizer"), Monsanto Company ("Monsanto"), and G. D. Searle LLC ("Searle").  McCluskey also named individuals Stewart, Webb, Anderson, Travis Taylor, and Robert Vandelune as defendants. Merck is the manufacturer and seller of VIOXX, and Pfizer, Pharmacia, Monsanto, and Searle are companies involved in the manufacture and sale of CELEBREX.  According to McCluskey's complaint, Stewart, Webb, Anderson, Taylor, and Vandelune are representatives of one or more of the corporate defendants who marketed and promoted VIOXX and CELEBREX to the health care providers that prescribed or provided the drugs to the decedent, Mary McCluskey.  Although none of the corporate defendants are citizens of Alabama, each individual defendant is an Alabama

citizen.   In addition to the named defendants, McCluskey also identified in his complaint four fictitious defendants, who can be ignored for purposes of this opinion.  Merck removed the action to this court on February 2, 2007, under 28 U.S.C. § 1441.  Pfizer, Pharmacia, Monsanto, and Searle timely joined in Merck's removal on February 6, 2007.

Anderson, Webb, and Stewart are or were employees of Merck, and Taylor and Vandelune are currently employees of Pfizer. Stewart was still a defendant when this action was removed from state court, but McCluskey filed an unopposed motion to dismiss his action against Stewart while the action was still proceeding in state court, and Stewart is not considered a necessary party.  The court considers that motion to have carried over when the removal was effected, and will grant McCluskey's unopposed motion.

In support of its notice of removal, Merck filed declarations or affidavits signed by the four remaining individual defendants (together, the "individual resident defendants").  The declarations of Anderson and Webb, which the declarants signed under the penalty of perjury, are materially identical:

1.    My name is Cedric Anderson.[1]  I am over twenty-one years of age, am of sound mind, and am competent to make this declaration.  This declaration is based upon my personal knowledge.

---

[1] The first sentence of Webb's declaration states: "My name is Anna Leigh Webb."

2.   At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Mary McCluskey.

3.   I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and therefore have never written or filled a prescription for Vioxx as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.   At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no dealings at all at any time with any patients of any of the physicians on whom I called, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.   At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including but not limited to Mary McCluskey.

4

Case 4:07-cv-00935-CRB Document 4-4 Filed 09/17/2007 Page 5 of 52

6.  I have never promoted or detailed Vioxx in Jefferson County, Alabama.

7.  I never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.  I have never met nor spoken with Mary McCluskey.

9.  I made no knowing misrepresentation concerning the safety or efficacy if Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

10. I have never made any presentations to the general public regarding Vioxx.

There are also no material differences between the above and the notarized affidavits signed by Taylor and Vandelune.  Taylor's affidavit states:

1.  I am over the age of twenty-one years and am otherwise competent to make this affidavit.  This affidavit is based upon my personal knowledge.

2.  I am currently employed as a pharmaceutical representative (also known as a "detailer") for Pfizer Inc ("Pfizer").  I have been employed by Pfizer as a detailer since February 9, 2004.[2]

3.  As a detailer, I visit physicians and healthcare providers' offices and provide them with FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing."  My job is to make the physician aware or certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

4.  I am not a physician or pharmacist.  I have no specialized medical or pharmacological education.  The information and material I use to detail Pfizer's drugs is derived exclusively from

_____

[2] Vandelune states in his affidavit that he has been employed by Pfizer as a detailer since 1985.

education provided to me by Pfizer.   Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail.  I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

5.   As part of my job duties, I have detailed Celebrex® in the past.   However, I do not know whether I visited with or provided any information about Celebrex® to plaintiff's prescribing physician because plaintiff has not identified him or her.

6.   At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Celebrex®, nor did I have any involvement in the FDA-approved package insert for Celebrex®.

7.   At no time did I ever sell, offer to sell, or take orders for the sale of Celebrex® to health care providers, physicians, or patients.

8.   I have never made any presentations to the general public concerning Celebrex®.

9.   I have never met or spoken with the Plaintiff, William D. McCluskey, or the Plaintiff's decedent, Mary L. McCluskey.

10.   I have never promoted or detailed Celebrex® in Jefferson County, Alabama.

*Analysis*

There is no dispute that Anderson, Webb, Taylor, Vandelune, and plaintiff McClusky are all Alabama citizens.  Anticipating that this fact would destroy the complete diversity required to support removal jurisdiction, Merck and Pfizer argue that the citizenship of the individual resident defendants should be ignored because those defendants were fraudulently joined.  *See*

*Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996).  According to Merck and Pfizer, there is no possibility that McCluskey can prove *any* of his claims against the individual resident defendants.  McCluskey counters that none of these defendants were fraudulently joined, and that this court therefore lacks subject matter jurisdiction to preside over this action because there is no complete diversity of citizenship.

## I.    Fraudulent Joinder

If McCluskey has failed to state a colorable case against each and all of the individual resident defendants, the court may disregard their citizenships and proceed to address the merits of Anderson's and Webb's motions to dismiss, and those of Merck, Pfizer, *et al.* to stay proceedings pending the possible transfer of this action.  If, on the other hand, McCluskey did not fraudulently join any of the non-diverse defendants, there is incomplete diversity and the case must be remanded.

The type of fraudulent joinder defendants advance applies where there is no reasonable basis to predict that an Alabama court would find any of the individual resident defendants liable to McCluskey under any of his state-law theories, and, in fact, every reason to predict that the case will not proceed to final judgment against them.  *See Legg v. Wyeth*, 428 F.3d 1317, 1324-25 (11th Cir. 2005); *see also Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (a defendant is fraudulently joined

where there is no possibility of recovery under state law for any claims against him). A heavy burden rests on the removing defendant to show that all non-diverse defendants were fraudulently joined. *Owens v. Life Ins. Co. of Georgia*, 289 F.Supp.2d 1319, 1324 (M.D. Ala. 2003); *see Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (removal must be strictly construed with all doubts resolved in favor of remand). As the Eleventh Circuit stated in *Triggs v. John Crump Toyota, Inc.*, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." 154 F.3d 1284, 1287 (11th Cir. 1998). The court bases its jurisdictional inquiry on the pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties, evaluating all factual issues and questions of controlling substantive law in plaintiff's favor. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11 Cir. 1998).

Removing defendants assert that they have satisfied this high burden. McCluskey counters that he has stated viable claims against the individual resident defendants (1) under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and (2) for fraud, fraudulent misrepresentation, fraudulent suppression and concealment. Thus, the question is whether McCluskey has any

possibility of recovery against any of the individual resident
defendants under any of these claims.  If so, there is incomplete
diversity and this case was improvidently removed.

**A.    The AEMLD Claim**

In order to establish liability under the AEMLD, a plaintiff
must prove that the defendant manufactured and/or sold the
allegedly defective product.  *Turner v. Azalea Box Co.*, 508 So.2d
253, 254 (Ala. 1987).  However, sales representatives who work
for pharmaceutical companies are not "sellers" or "suppliers" of
the drugs manufactured by the companies they represent for
purposes of the AEMLD.  *Bloodsworth v. Smith & Nephew*, 2005 WL
3470337, at * 6-*7 (M.D. Ala., Dec. 19, 2005).  In *Bloodsworth*,
the court was presented with a set of facts remarkably similar to
the one now at issue.  Plaintiffs in *Bloodsworth* asserted a claim
under the AEMLD against an orthopedic-hip-implant manufacturer,
one of that manufacturer's sales representatives, and a separate
manufacturer/seller.  The first defendant was not an Alabama
citizen, but the latter two defendants were non-diverse.  In its
opposition to plaintiff's motion to remand, the diverse
manufacturer offered an affidavit of the sales representative,
wherein the affiant stated that he had never spoken to the
injured plaintiff.  He did not, however, confirm or deny that he
was the individual who received purchase orders from the injured
plaintiff's surgeon.  The sales representative also attested that

9

he was "not involved in the design or manufacture of any [of manufacturer's] products used in [the injured plaintiff's] procedures," and that he did not provide any "warranties, express or implied, with respect to those products." Judge Dement of the Middle District of Alabama concluded under these facts that the sales representative could not be deemed to be a "seller," and was therefore fraudulently joined as a defendant with respect to plaintiffs' AEMLD claim. *See id.*

This case is similar to *Bloodsworth* inasmuch as all individual resident defendants have sworn that they did not personally sell or offer to sell VIOXX or CELEBREX to Mary McCluskey. The declarations and affidavits of these defendants are not contradicted. Taylor and Vandelune further submit that as "detailers" for Pfizer, they did not sell or offer to sell to *anyone* — whether to individual patients or to health-care professionals. Moreover, similar to the case in *Bloodsworth*, neither Anderson nor Webb confirms or denies whether he or she sold VIOXX to the health-care provider or providers who treated Mary McCluskey — and neither individual could be expected to do so, since McCluskey has not identified the health-care providers who prescribed either of the drugs at issue to the decedent. *See* Compl., at 35-41. For these reasons, and for the remaining reasons set forth in *Bloodsworth*, the individual resident defendants can not be deemed to be "sellers" for purposes of the

AEMLD.  *See generally Bloodsworth*, 2005 WL 3470337, at *5-*7.
The individual resident defendants were therefore fraudulently
joined with respect to McCluskey's claim for relief under the
AEMLD.

### B.    The Fraud, Fraudulent Suppression, and Concealment Claim

Under Alabama law, in order to state a claim for fraud and
fraudulent misrepresentation, a plaintiff must show that the
defendant made a misrepresentation of material fact, that he made
it willfully to deceive, recklessly, without knowledge, or
mistakenly, that the misrepresentation was justifiably relied on
by the plaintiff under the circumstances, and that the
misrepresentation caused damage as a proximate consequence.  Ala.
Code § 6-5-101.  The Supreme Court of Alabama has held that
"those who are only conduits through which faulty information is
supplied by one person to a third person cannot be held liable
for fraud unless they acted in bad faith."  *Fisher v. Comer
Plantation, Inc.*, 772 So.2d 455 (Ala. 2000).

Here, each of the individual resident defendants has
tendered a declaration or affidavit indicating that he or she was
never involved in the design, testing, or manufacture of VIOXX or
CELEBREX, is not trained as a physician or pharmacologist, and
has received all information regarding VIOXX or CELEBREX from the
respective employer.  In his motion to remand, McCluskey submits
no evidence that could discredit the individual resident

11

defendants' affidavits and declarations, so there is no issue of fact which should be resolved in favor of this court's finding that it lacks subject-matter jurisdiction.  *See Wyeth*, 428 F.3d at 1323.  In accordance with the undisputed facts contained in the affidavits and declarations, if Mary McCluskey was supplied with faulty information when she was prescribed VIOXX and CELEBREX, then the individual resident defendants' roles in supplying that information were those of mere "conduits." Accordingly, there is no reasonable basis to predict that an Alabama court would find the individual resident defendants liable to McCluskey for fraud, fraudulent suppression, and concealment, and these defendants were therefore fraudulently joined with respect to these claims.  *See id.* at 1323-25 (finding that the record supported defendant drug manufacturer's contention that defendant salesperson was fraudulently joined, when there was no evidence that salesperson knew or should have known of prescription drug's allegedly dangerous effects).

Because all of the individual resident defendants were fraudulently joined with respect to each claim that McCluskey says he can prove against them, the court will disregard the citizenship of the individual resident defendants and will presume that complete diversity exists.  Since there is also no dispute that the jurisdictional amount-in-controversy requirement has been met, McCluskey's motion to remand will be denied without

prejudice to its being re-filed if subsequently discovered facts provide a basis for its reconsideration.  Anderson's and Webb's respective motions to dismiss for failure to state a claim will be granted.

## II.  Defendants' Motions to Stay Proceedings

After this action was removed, Merck filed a motion to stay proceedings pending the possible transfer of the action against it for consolidated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 1657.  Similarly, defendants Pfizer, Pharmacia, Searle, Taylor, and Vandelune, filed a motion for this court to stay proceedings pending the possible transfer to *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.*, MDL-1699. These MDL proceedings have been established to coordinate all product-liability cases involving the alleged health risks that arise from taking VIOXX and CELEBREX, respectively.

When deciding whether to issue a stay pending the Judicial Panel on Multidistrict Litigation's ("MDL Panel") decision on transfer of an individual action, the court looks at three factors: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2) hardship and inequality to the moving party if the action is not stayed; and (3) potential prejudice to the non-

13

moving party.  *See Rivers v. The Walt Disney Co.*, 980 F. Supp.
1358, 1360 (C.D. Cal. 1997).  In his opposition to the motions to
stay, McCluskey urges the court to deny the motions only until it
has determined whether it has subject matter jurisdiction or
whether the action should be remanded to state court.  He does
not argue that if the action is **not** remanded, the motion to stay
should not be granted.  Accordingly, the court sees no potential
prejudice to McCluskey if this action is stayed.  Moreover, the
court agrees with the various defendants that judicial resources
will best be allocated if the stay request is granted, especially
considering that the MDL Panel will likely decide whether to
transfer this action within the next two to four weeks.  Finally,
defendants' suggestions of hardship and inequality if the action
is not stayed make sense.  Accordingly, the court will grant
defendants' motions to stay.

*Conclusion*

In accordance with the foregoing, McCluskey's motion to remand
will be denied, and his motion to dismiss defendant Stewart will be
granted.   The motions to stay proceedings, filed by various
defendants, will be granted.  Anderson's and Webb's motions to
dismiss this action as to them will also be granted.

DONE this 7th day of March, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

FILED

2007 Mar-07 PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM D. MCCLUSKEY, as        )
Surviving Spouse and as         )
Personal Representative of      )
the Estate of Mary L.           )
McMcluskey,                     )
                                )    CIVIL ACTION NO.
        Plaintiff,              )    07-AR-0232-S
                                )
v.                              )
                                )
MERCK & CO., INC., a foreign    )
corporation, et al.,            )
                                )
        Defendants.             )

## ORDER

In accordance with the accompanying memorandum opinion, the motion to remand filed by plaintiff, William D. McCluskey (Doc. No. 13), is DENIED. The motions filed by defendant Merck & Co., Inc. (Doc. No. 2), and by defendants Pfizer, Inc., Pharmacia Corporation, G. D. Searle LLC, Travis Taylor, and Robert Vandelune (Doc. No. 8), to stay all proceedings pending possible transfer of this action for coordinated pretrial proceedings as part of the case, *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.* MDL No. 1657, and the case, *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.*, MDL-1699, are GRANTED. This action is hereby STAYED pending the Judicial Panel on Multidistrict Litigation's determination of whether this action will be transferred. Defendants that moved for the stay shall provide the court with a brief written report on the status of the

MDL Panel's decision on **April 6, 2007** unless the court hears from the MDL Panel before that time.

Plaintiff's motion to dismiss defendant James A. Stewart (Exhibit B to Doc. No. 1) is GRANTED, and plaintiff's action against Stewart is DISMISSED WITHOUT PREJUDICE. The motions to dismiss filed by defendants Cedric Anderson (Doc. No. 4) and Anna Leigh Webb (Doc. No. 5) are GRANTED, and plaintiff's action as against Anderson and Webb is DISMISSED WITH PREJUDICE.

Done this 7th day of March, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

FILED

2006 Jun-01 PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER D. CONNER | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| vs. | ) | CV 06-PT-843-E |
| | ) | |
| G. D. SEARLE, LLC, et al | ) | |
| | ) | |
| **Defendants** | ) | |

**MEMORANDUM OPINION**

This cause comes on to be heard on Defendants' Motion for Stay of all Proceedings

Pending Transfer to Multidistrict Litigation Proceeding filed on May 4, 2006 and plaintiff's

Motion to Remand filed on May 5, 2006.

The court starts with a consideration of *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005).

Contrary to plaintiff's repeated argument that the *Legg* court could not and did not consider the

merits of the remand, that court stated:

> *We may review the merits* of a remand order in considering whether the district
> court abused its discretion by awarding attorneys' fees and costs under 28 U.S.C.
> § 1447(e). (Emphasis added).

The court proceeded to discuss the merits of that case, the facts of which are very similar

to those here.

This court having fully considered the evidence, the briefs, the *Legg* case and the Report

and Recommendation in Dr. Gene N. Gordon v. Pfizer Inc., et al, Civil Action No. 06-RRA-703-

E, concludes that the plaintiff's Motion to Remand should be denied. The defendant's Motion to

Stay will be granted.

This the 1st day of June, 2006.


                                   **ROBERT B. PROPST**

        **SENIOR UNITED STATES DISTRICT JUDGE**

FILED

2006 May-10 PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

Dr. GENE N. GORDON,       )
                           )
        Plaintiff,        )
                           )     CASE NO.:
v.                             )
                           )     CV-06-RRA-703-E
PFIZER INC., et al.,       )
                           )
        Defendants.     )

**REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

On February 14, 2006, Plaintiff filed this action in the Circuit Court of Talladega County, Alabama. The action is brought by the plaintiff, Dr. Gene N. Gordon, against the defendants, G.D. Searle, LLC., Pharmacia Corporation, Monsanto Company, Pfizer, Inc., and Ron Pollard. The complaint alleges that the prescription drug Bextra (Valdecoxib) caused the plaintiff to have a heart attack, and otherwise be injured. The following causes of action are alleged against all defendants: negligence (count I), defective design (count II), failure to warn (count III), breach of express warranty of merchantability (count IV), breach of implied warranty of merchantability (count V), fraud (count VI), and negligent misrepresentation (count VII). The individual defendant, Ron Pollard, is the only non-diverse defendant.

There is no dispute that Plaintiff and Defendants Searle, Pharmacia, and Pfizer are "citizens of different States" for purposes of 28 U.S.C. § 1332(a)(1) or that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.[1] *See*

---

[1] Specifically, Plaintiff Dr. Gene Gordon is, and was at all relevant times, an adult resident and citizen of Alabama. *See* Notice of Removal ¶ 6. Pfizer is now, and was at the time of filing of the Complaint, a corporation organized

*Notice of Removal*, ¶¶ 3-11; *Brief in Support of Motion to Remand*, at 1.  Plaintiff also has named a non-diverse pharmaceutical detailer Rod Pollard.  The defendants assert that Pollard has been fraudulently joined.

On September 6, 2005, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multi-district Litigation ("MDL") proceeding for Bextra cases such as this pending in federal courts across the country.  *See In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005).  On April 11, 2006, Defendants sent a "tag-along" letter regarding this action to the JPML pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML.  On May 2, 2006, the JPML listed the instant case on a conditional transfer order ("CTO").

The JPML routinely transfers cases in which remand motions are pending.  Moreover, the JPML previously instructed federal district judges with Bextra®-related cases such as this one on their docket that although "you are free to rule on the motion [to remand], of course, or wait until the Panel has decided the transfer issue[,] [t]he latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there." JPML Ltr. Re: MDL-1699—*In re Bextra & Celebrex Marketing, Sales Practices & Prods. Litig.* at 1 (J.P.M.L.

---

under the laws of Delaware with its principal place of business in New York, and therefore is and was a citizen of Delaware and New York. *Id.* ¶ 7.   Pharmacia is now, and was at the time of filing of the Complaint, a corporation organized under the laws of Delaware with its principal place of business in New Jersey, and therefore is and was a citizen of Delaware and New Jersey. *Id.* ¶ 8.  Searle is now, and was at the time of filing of the Complaint, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, a limited liability company whose sole member is (and was) Pharmacia Corporation which is (and was) a corporation existing under the laws of the state of New Jersey. *Id.* ¶ 9.  Monsanto is not a citizen of Alabama. *Id.* ¶ 10.

May 13, 2005).

The defendants wish this matter stayed pending full transfer of the case, and so have filed a motion to stay all proceedings pending transfer to multidistrict litigation proceeding. (Doc. 5). Numerous cases involving the joinder of Alabama pharmaceutical representatives already have transferred, or are in the process of transferring, to the MDL Court. *See, e.g., See Jackson v. Pfizer, Inc. et al.*, CV-2:05-cv-841-F (M.D. Ala. Dec. 5, 2005) (Walker, J.); *Nelson v. Pfizer, Inc., et al.*, CV-2:05-cv-832-F (M.D. Ala. Oct. 20, 2005) (Fuller, J.); *Thomas v. Pfizer, Inc. et al.*, CV-2:05-cv-824-F (M.D. Ala. Nov. 15, 2005) (Fuller, J.); *Hall v. Pfizer, Inc., et al.*, CV-2:05-cv-941-F (M.D. Ala. Nov. 21, 2005) (McPherson, J.); *Beverly v. Pfizer, Inc., et al.*, CV-05-0542-M, (S.D. Ala. Nov. 17, 2005) (Milling, J.); *see also* February 14, 2006 Transfer Order; Conditional Transfer Order (CTO) CTO-3.

The plaintiff has filed a motion to remand, claiming that this court lacks subject matter jurisdiction over this case. (Doc. 6). Because the fraudulent joinder issue rests on the determination of Eleventh Circuit and Alabama law, it is determined that this court is the proper court to determine those issues.

## II.    ANALYSIS

### A.    Fraud and Misrepresentation Claims

The plaintiff does not dispute defendants' showing that there is complete diversity between plaintiff and the remaining defendants or that the amount in controversy requirement is met. The only aspect of this court's diversity jurisdiction that plaintiff challenges is whether Pollard is fraudulently joined. The citizenship of fraudulently joined defendants should is disregarded for purposes of assessing diversity and proper removal. *See*

*e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11ᵗʰ Cir. 1996), *rev'd on other grounds,* 204 F.2d 1069 (11ᵗʰ Cir., 2000). Under the Eleventh Circuit's standard for fraudulent joinder, remand should be denied where there is "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims; the potential for liability "must be reasonable, not merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325, & n. 5 (11ᵗʰ Cir. 2005).

"The removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'" *See Legg v. Wyeth,* 428 F.3d 1317, 1325 (11ᵗʰ Cir. 2005) (internal quotation marks omitted). "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enamiling & Stamping Co.,* 204 U.S. 176, 186 (1907).

The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction by simply naming in-state defendants. In *Legg v. Wyeth,* 428 F.3d 1317, 1325 (11ᵗʰ Cir. 2005), the Eleventh Circuit recently recognized this "common strategy employed" by plaintiffs in pharmaceutical product liability cases such as this in which plaintiffs' "name local parties, often ... local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court." *See Legg,* 428 F.3d at 1325. In *Legg,* the Eleventh Circuit explained the proper standard for determining whether a pharmaceutical representative defendant is fraudulently joined. Joinder of a non-diverse defendant is fraudulent where there is "no reasonable possibility" that the plaintiff would be able to

4

establish a cause of action against a resident defendant. *See, e.g., Legg,* 428 F.2d at 1325; *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998).

Fraudulent joinder may be shown by a lack of a factual or legal basis for plaintiff's claims. *See Owens v. Life Ins. Co. of Georgia,* 289 F.Supp.2d 1319, 1323-24 (M.D.Ala. 2003) (Fuller J) (denying remand and finding no possibility that plaintiff could establish a cause of action against the resident defendant and thus resident was fraudulently joined). "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg,* 428 F.3d at 1325 n.5 *(quoting Braden v. Wyeth,* CV-04-PT-235-E, 2005 U.S. Dist LEXIS 25243) (N.D. Ala. June 30, 2004).

_____The thrust of Plaintiff's argument in his Motion to Remand is that numerous unnamed pharmaceutical representatives in Alabama made fraudulent and negligent misrepresentations and failed to disclose that Bextra causes heart attacks, the injury of which Plaintiff complains. *Brief in Support of Motion to Remand,* at 11-21 (focusing strictly on claims of misrepresentation, fraud and suppression as it relates to other pharmaceutical representatives).

As the Eleventh Circuit recently explained in *Legg,* Plaintiff cannot assert fraud or negligent misrepresentation claims against Pollard because Plaintiff fails to specifically allege knowledge or bad faith on his part. In *Legg,* as here, plaintiffs asserted numerous claims against the pharmaceutical companies and pharmaceutical representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the prescription medication, Redux.  Defendants removed the case

on diversity grounds, arguing fraudulent joinder of the three named non-diverse pharmaceutical representatives. The defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that she had promoted the drug in question to licensed healthcare providers and answered their questions based on information provided to her by her employer. *Id.* at 1321. The affidavit stated, in pertinent part:

- My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth.

- I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings.

- I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.

- I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to defendants' submission, plaintiffs offered as evidence voluminous training materials used by the pharmaceutical companies and its sales representatives in marketing Redux, as well as affidavits from several physicians stating that the pharmaceutical representatives had made misrepresentations to them. *Id.* at 1322 & n.4. Plaintiffs argued that the training materials established that pharmaceutical representatives had knowledge of adverse events associated with Redux. *See id.* at 1322-25. Plaintiffs further argued that the professional representatives learned disingenuous detailing strategies to be used in detailing Redux, including withholding information from physicians. *See id.*

Applying Alabama law, the Eleventh Circuit court found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *See*

*Legg*, 428 F.3d at 1324-1325 & n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  The Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the pharmaceutical representative] as an individual employee, personally liable for any wrongful action by Wyeth in absence of evidence that [the individual pharmaceutical representative] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25.

The Court explained that when a defendant presents evidence "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint. *Id.* at 1323.

Here, as in *Legg*, Defendant Pollard has submitted a declaration stating:

- As a detailer, I visit physicians and healthcare providers' offices and provide them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing."  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

- I am not a physician or pharmacist.  I have no specialized medical or pharmacological education. All of the information and material I use to detail Pfizer's drugs, including Bextra, is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail.

- I was not aware of, and did not detail physicians with, any additional information regarding the risks or benefits of Bextra other than what was provided to me by Pfizer and in the FDA-approved labeling.

- I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

- At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra, nor did I have any involvement in the FDA-approved package insert for Bextra.

7

>  - At no time did I ever sell, offer to sell, or take orders for the sale of Bextra to health care providers, physicians or patients.
>
>  - I have never made any presentations to the general public concerning Bextra.

*Pollard Affidavit*, at 1-3.

In response, plaintiff attaches various portions of call notes from Alabama pharmaceutical representatives other than Pollard. Indeed, Plaintiff concedes that the call notes are "from various *other* Pfizer Defendant sales representatives in Alabama. . ." and are not call notes or other documentation regarding any alleged misrepresentations made by Pollard. *Brief in Support of Motion to Remand*, at 11 (emphasis added). Plaintiff fails to provide any evidence or even make any specific allegations related to any specialized knowledge by Rod Pollard. Rather, Plaintiff's Complaint and Motion to Remand contain conclusory allegations and deductions:

>  - As evidenced by the call notes from various other Pfizer Defendant sales representatives in Alabama, the Plaintiff *has alleged and anticipates* he will be able to show that . . . Rod Pollard, fraudulently suppressed material information . . . and misrepresented the safety and efficacy of Bextra.
>
>  - Plaintiff also *anticipates* that he will be able to show that [Rod Pollard] participated in an aggressive marketing campaign. . .
>
>  - Plaintiff *anticipates* that discovery will show that [Rod Pollard's] knowledge concerning Bextra was superior to the knowledge held by the physicians to whom he made sales calls.
>
>  - Plaintiff also *anticipates* that discovery will show that the Plaintiff, as a physician who took Bextra, relied on information provided by Defendants.

*Id.* at 11-14 (emphasis added). The Eleventh Circuit has explained that such "unsupported allegations" do not provide a basis for remand: *"We do not, however, in the absence of any proof assume that the nonmoving party [plaintiff] could or would prove the necessary facts."*

*Legg*, F.3d at 1323 (internal quotation omitted and emphasis original).

Plaintiff also seeks to bolster his claims by referencing documents by a separate pharmaceutical company involving a separate prescription medication. *Id.* at 22 (describing detailing material allegedly from VIOXX litigation). Plaintiff speculates that he "expects that he will be able to obtain similar documents in the present case once he has had an opportunity to conduct discovery." *Id.* at 23. Plaintiff's arguments are without merit because in determining a motion to remand, a court looks to the allegations in the complaint, rather than Plaintiff's wishful speculation about what factual allegations could be made following discovery. *See Legg*, 428 F.3d at 1323 (in light of defendant's affidavits, plaintiff cannot support its motion to remand with "unsupported allegations"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (holding that court should determine jurisdiction based on the plaintiff's pleadings at the time of removal).

The plaintiff also provides his own affidavit in which he states:

- I rely on the information that the sales representatives provide to me concerning the safety of their drugs. This information is a strong factor in whether I decide to prescribe a medication to a particular patient or to take it myself.

- Rod Pollard . . . visited my office on a few occasions in order to promote the drug Bextra. During each visit, Mr. Pollard provided me with a several months supply of Bextra for my personal use.

- In promoting the drug Bextra, Mr. Pollard discussed the strong safety and effacacy of Bextra. Mr. Pollard also shared positive information concerning the overall safety of Bextra.

- At no time did Mr. Pollard ever inform me of any potential cardiovascular risks associated with Bextra.

- Based on Mr. Pollard's representations of the effacacy and safety of Bextra, I prescribed Bextra to my patients. Additionally, I used the samples that Mr.

Pollard provided to me for my personal use.

*Gotdon Affidavit*, at 1-2. This language provides no evidence that Pollard either knew or should have known about any alleged risk of Bextra. Further, this language does not provide evidence or even make any allegations related to any specified knowledge by Pollard other than what was provided by his employer and in the FDA-approved labeling.

Without any competent evidence that Pollard made knowing misrepresentations or acted in bad faith – and particularly in light of Pollard's statement that he had no specialized knowledge about Bextra and relied entirely on information provided to him by Pfizer – there is "no reasonable possibility" that an Alabama court would conclude that he is liable for fraud or misrepresentation. *See, e.g., Legg*, 428 F.3d at 1324; (*citing Fisher v. Comer Plantation, Inc.*, 772 So.2d 455 (Ala. 2000)) ("those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co. v. Belmont Machinery Co.*, 308 F.Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005); *In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD claims).

Plaintiff's fraud and misrepresentation claims also lack the specificity required to satisfy Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with

10

particularity), Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule).  Thus, Plaintiff cannot maintain any of his fraud-based claims against Pollard. To maintain a cause of action based on fraud or negligent misrepresentation, Plaintiff must prove that: 1) the defendant made a false representation to the plaintiff; 2) the representation concerned a material fact; 3) the plaintiff relied on the representation; and 4) the plaintiff incurred damage as a proximate result of the reliance. *Reeves Cedarhurst Dev. Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180 (Ala.1992); *see also* Ala. Code §§ 6-5-101 & 6-5-103 (2002).  As stated, averments of fraud must be stated with particularity under either federal or Alabama law.  Fed. R. Civ. Pro. 9(b); Ala. R. Civ. P. 9(b), Comment. Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv. Inc.*, 131 F.Supp.2d 1296, 1302 (M.D. Ala. 2001).  The pleading requirements are not satisfied if plaintiff fails to "distinguish among defendants and specify their respective role in the alleged fraud." *Id.*  Thus, a plaintiff must allege the time, place, content and speaker of the allegedly fraudulent misrepresentations. *Id.*; *accord In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined where plaintiff's fraud-based claims lacked specificity).

Here, Plaintiff's allegations fail to allege the essential elements of fraud and misrepresentation. Plaintiff alleges in his Complaint:

> Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and user and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug ....

*Complaint* ¶ 73.

11

The Complaint fails to specify time, place, content or speaker of <u>any</u> particular representations by Pollard.   Such general allegations fail to meet the requirements of Rule 9(b).

**B.**   **Plaintiff fails to state legally cognizable claims against Pollard for violation of the AEMLD or for breach of express or implied warranty.**

To the extent Plaintiff asserts products liability claims against Pollard for violation of the AEMLD or for breach of express or implied warranty not already addressed above, there is no reasonable basis to predict that he can prevail as these claims apply only to "sellers" and "manufacturers" and Pollard is not a "seller" or "manufacturer" of Bextra.  *See Pollard Affidavit* ¶¶ 2, 5, 6.  Plaintiff's negligence claims, although not denominated as AEMLD violations, are as a practical matter AEMLD claims or otherwise fail.  *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD based-claims); *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d at 287 (applying Alabama law and finding resident pharmaceutical representatives fraudulently joined in claims for product liability under AEMLD, negligence, wantonness, fraudulent misrepresentation, and fraudulent suppression).

To establish liability under the AEMLD, a plaintiff must prove defendants manufactured or sold the allegedly defective product.  *Turner v. Azalea Box Co.,* 508 So.2d 253, 254 (Ala. 1987).   But, under Alabama law, pharmaceutical representatives under Alabama law are not considered to be sellers or suppliers of the prescription drugs they represent. *See In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d at 287.  Moreover, Pollard's

12

affidavit constitutes affirmative proof through his declaration that he is not a "seller" or "manufacturer." To the contrary, he is simply a "detailer" on behalf of his employer, Pfizer. Therefore, he cannot be held liable under product liability causes of action.

Further, Plaintiff fails to allege any underlying facts establishing that Pollard acted outside the scope of his employment such that he can be held personally liable under the AEMLD. Alabama law requires that a corporate employee personally participate in the alleged corporate wrongdoing to be liable under the AEMLD. *See, e.g., Turner v. Hayes,* 719 So.2d 1184, 1188 (Ala. Civ. App. 1997) ("corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.") *rev'd in part on other grounds sub nom. Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190 (Ala. 1998); *Mills v. Wex-Tex Indus.* 991 F. Supp. 1370, 1381-82 (M.D. Ala.1997) (employee not individually liable absent allegation of personal participation in alleged tortious conduct). Because Pollard neither manufactured, sold, designed, tested nor participated in the development of Bextra, there is no possibility that Plaintiff can state a viable negligence and/or AEMLD claim against him.

As to Plaintiff's breach of warranty claims, Alabama law likewise precludes any possibility that Plaintiff can hold Pollard liable for breach of warranty claims. *See, e.g.,* Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Rezulin I,* 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative). Plaintiff alleges:

Defendants Searle, Pharmacia, Monsanto, Pfizer and Pollard...made express

13

representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

Complaint ¶ 54.

At the time that Defendants designed, tested, inspected, manufactured, assumed, developed, labeled, sterilized, licenses, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valdecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

*Id.* at ¶63.

Plaintiff does not attempt to offer a factual basis for his warranty claims. Yet even if he had, he cannot maintain an action for breach of warranty against Pollard who (as explained above) is not a seller and thus, cannot be liable as a warrantor of a product. Under breach of express warranty, plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain . . " Ala. Code §7-2-213(1)(a) (2002). An implied warranty arises when a "seller is a merchant with respect to goods of that kind." Ala. Code §7-2-314(1) (2002). Both breach of express and implied warranty claims require a finding that a seller or manufacturer breached a warranty. Here, Pollard is not considered a "seller" under Alabama law. *Bowman v. Coleman Co., Inc.*, No. 96-0448-P.-C, Slip Op. at 8 (S.D. Ala. Sept 3, 1996) (retail store manager is not a "seller"); *see also Johnson v. Parke-Davis,* 114 F. Supp.2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as a warrantor of the product."); *see also* Section 20, comment g, Restatement (Third) of Torts: Product Liability §20, cmt. g. (1998) (in defining

14

one who sells or otherwise distributes stating that "[p]ersons assisting or providing services to product distributors . . . are not subject to liability under the rules of this Restatement. . . . Sales personnel and commercial auctioneers are also outside the rules of this Restatement.").[2]

Accordingly, as with Plaintiff's AEMLD and negligence claim, because pharmaceutical representatives are not considered sellers or distributors under Alabama law, Pollard cannot be liable as a warrantor of Bextra under claims for breach of warranty.

C. **Failure to warn.**

Under Alabama law, a prescription drug manufacturer satisfies its duty to warn under a AEMLD and negligent failure to warn theory, by distributing an adequate warning to the prescribing physician. *Stone v. Smith, Kline & French Labs., et al.,* 447 So.2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of a prescription drug); *id.* at 1304 (holding that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient); *Gurley v. American Honda Motor Co.,* 505 So.2d 358, 361 (Ala. 1987) (holding that a manufacturer fulfills its negligent failure to warn cause of action, as a matter of law, by distributing the product with reasonable warnings); *Purvis v. PPG Indus., Inc.,* 502 So.2d 714 (Ala 1987).

---

[2] Significantly, even if Pollard were considered to be a "seller," which he is not, mere delivery by a seller to a buyer of the manufacturer's express warranty is not sufficient to make the manufacturer's express warranty become an express warranty by the seller. *Courtesy Ford Sales, Inc. v. Farrior,* 298 So.2d 26 (Ala. App. 1974), *superseded by statute on other grounds, Arnold v. Campbell,* 398 So.2d 301 (Ala. App. 1981).

Plaintiff summarily argues that Pollard called upon Plaintiff and that Plaintiff allegedly ingested samples of Bextra. *Brief in Support of Motion to Remand*, at 23-24. Plaintiff contends that Pollard voluntarily assumed a duty to warn. Plaintiff's argument is without merit. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1; *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Plaintiff fails to allege any facts indicating that Pollard had any unique or specialized knowledge or information and warnings contained in the FDA approved physician package insert that he had an obligation to disclose to prescribing physicians. Moreover, Pollard submitted affirmative proof in his declaration that he had no knowledge about the risks and benefits of Bextra other than what was provided to him by Defendants. *Pollard Affidavit*, ¶ 4. Pollard further presented uncontested proof that he is not a physician or pharmacist and does not have any specialized medical or pharmacological education. *Id.* Thus, Plaintiff cannot state a viable cause of action against Pollard for failure to warn.

D.      **Design Defect.**

Plaintiff can also make no viable claim against Pollard for defective design. Pollard's affidavit states that he had no involvement with the design or manufacturing of Bextra and therefore has no possible connection to this claim. *Pollard Affidavit*, ¶ 5. In order to establish a design defect claim, Plaintiff must prove that a safer, more practical alternative design was available to the *manufacturer* at the time it manufactured the product. *See General Motors Corp. v. Edwards*, 482 So.2d 1176 (Ala. 1985)(emphasis added). As such, this claim is plainly targeted at the manufacturer, not the detailer and Plaintiff cannot maintain an action for design defect against Pollard.

16

## III.   RECOMMENDATION

As there is "no reasonable possibility" that the plaintiff would be able to establish a cause of action against defendant Pollard, it is **RECOMMENDED** that the motion to remand be **DENIED**, and that defendant Pollard be **DISMISSED with prejudice**. It is also recommended that the motion to stay be granted, pending transfer to multidistrict litigation.

DONE this 10th day of May, 2006.

Robert R. Armstrong, Jr.
United States Magistrate Judge

17

FILED

2006 May-22 PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

Dr. GENE N. GORDON,         )
                                  )
      Plaintiff,          )
                                  )     CASE NO.:
v.                        )
                                  )     CV-06-RRA-703-E
PFIZER INC., et al.,        )
                                  )
      Defendants.      )

Memorandum of Opinion

This matter comes before the court on the motion to stay (doc. 5) and motion to remand (doc. 6). The magistrate judge filed a report and recommendation on May 10, 2006, finding that there is "no reasonable possibility" that the plaintiff would be able to establish a cause of action against defendant Pollard, and recommending that the motion to remand be denied, and that defendant Pollard be dismissed with prejudice. It was also recommended that the motion to stay be granted, pending transfer to multidistrict litigation. An objection to the Report and Recommendation was filed by the plaintiff.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, and the objection thereto, the Court is of the opinion that the magistrate judge's report is due to be and is hereby ADOPTED and his recommendation is ACCEPTED. An appropriate order will be entered.

DONE this 22nd day of May 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

FILED
2006 May-22 PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| Dr. GENE N. GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.: |
| v. | ) | |
| | ) | CV-06-RRA-703-E |
| PFIZER INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

In accordance with the memorandum opinion entered contemporaneously herewith, it is

hereby ORDERED, ADJUDGED, and DECREED as follows:

1.  The motion to remand (doc. 6) is DENIED.

2.  The motion to stay (doc. 5) is GRANTED.

3.  This matter is stayed pending transfer to multidistrict litigation.

4.  Defendant Pollard is DISMISSED, with prejudice.

DONE and ORDERED this 22nd day of May 2006.


INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

STAY, TRANSFERRED MDL

## U.S. District Court
## Northern District of Alabama (Western)
## CIVIL DOCKET FOR CASE #: 7:07-cv-00045-HGD

Dunlap v. Pfizer Inc. et al
Assigned to: Magistrate-Judge Harwell G Davis, III
Cause: 28:1441 Petition for Removal- Product Liability

Date Filed: 01/05/2007
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Federal Question

### Plaintiff

**Sandra S. Dunlap**
*as the Administratrix of the Estates of Thomas Dudley Dunlap*

represented by **Gerald B Taylor, Jr**
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103-4160
205-269-2343
Fax: 334-954-7955
Email: jerry.taylor@beasleyallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jere L Beasley**
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
PO Box 4160
Montgomery, AL 36103-4160
1-334-269-2343
Email: jere.beasley@beasleyallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Navan Ward, Jr**
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
234 Commerce Street
PO Box 4160
Montgomery, AL 36103-4160
334-269-2343
Fax: 334-954-7555
Email: navan.ward@beasleyallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

EXHIBIT

D

**Defendant**

**Pfizer Inc.**
*a Delaware Corporation*

represented by **Lawrence B Clark**
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
Suite 1600 Wachovia Tower
420 20th Street North
Birmingham, AL 35203
205-328-0480
Fax: 205-322-8007
Email: lclark@bakerdonelson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Asbell**
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ PC
SouthTrust Tower, Suite 1600
420 North 20th Street
Birmingham, AL 35203-5202
205-244-3811
Fax: 205-488-3811
Email: jasbell@bakerdonelson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Pharmacia Corporation**
*a Delaware Corporation*

represented by **Lawrence B Clark**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Asbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Monsanto Company**
*a Delaware Corporation*

represented by **Lawrence B Clark**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Asbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**G.D. Searle, LLC**

represented by **Lawrence B Clark**

*a Delaware Corporation*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Asbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bryan G. Robinson**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/05/2007 | 1 | NOTICE OF REMOVAL by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc., from Circuit Court of Tuscaloosa County, Alabama, case number 63-CV-06-900022. ( Filing fee $ 350, receipt number: 200 232639 )filed by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc. (Attachments: # 1 Notice of Removal part 2)(AHI) (Entered: 01/09/2007) |
| 01/05/2007 | 2 | NOTICE of Certificate of Filing Notice of Removal by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc. (AHI) (Entered: 01/09/2007) |
| 01/05/2007 | 3 | ANSWER to Complaint by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc.(AHI) (Entered: 01/09/2007) |
| 01/08/2007 | 4 | NOTICE of Corporate Disclosure by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc. (AHI) (Entered: 01/09/2007) |
| 01/08/2007 | 5 | MOTION to Stay all proceedings pending transfer to MDL by Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Pfizer Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D) (AHI ) (Entered: 01/09/2007) |
| 01/10/2007 | | ORDER granting 5 Motion to Stay. Signed by Judge Harwell G Davis III on 1/10/07. (LBG, ) (Entered: 01/10/2007) |
| 03/02/2007 | 6 | ORDER Transferring Case to MDL: ORDER of Judicial Panel on Multidistrict Litigation transferring this case to the Northern District of California for inclusion in MDL 05-1699; certified copy of docket entries and documents requested by transferee clerk emailed to Clerk of Court in District of Northern Distict of California. (MNH) (Entered: 03/02/2007) |
| 03/02/2007 | 7 | NOTICE of transmittal letter to the Northern District of California. Copies of transfer order, docket sheet and files emailed as requested to be included in MDL. (MNH) (Entered: 03/02/2007) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/05/2007 15:37:47 | | |
| PACER Login: | sp0413 | Client Code: | 085-0211 |
| Description: | Docket Report | Search Criteria: | 7:07-cv-00045-HGD |
| Billable Pages: | 2 | Cost: | 0.16 |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HENRY C. MORRIS,                         )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )     CASE NO. 2:06-cv-349-MEF
                                         )
PFIZER, INC., *et al.*,                  )
                                         )
        Defendants.                      )

## O R D E R

Upon consideration of the plaintiff's Motion to Expedite Ruling on Motion to Remand

(Doc. #16) filed on May 25, 2006, it is hereby

ORDERED that the motion is DENIED.

DONE this 26th day of May, 2006.

        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OZZIE JACKSON,                        )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CASE NO. 2:05-cv-841-F
                                      )
PFIZER, INC., *et. al.*,              )
                                      )
        Defendants.                   )

## ORDER

This cause is before the Court on Defendants' Motion for a Stay of All Proceedings

Pending Transfer to Multidistrict Litigation Proceeding (Doc. # 14) filed on September 26,

2005. The Court has considered the arguments in support of and in opposition to this motion.

It is hereby ORDERED as follows:

1.      Defendants' Motion for a Stay of All Proceedings Pending Transfer to

        Multidistrict Litigation Proceeding (Doc. # 14) is GRANTED and this case is

        STAYED pending a final decision from the Panel on Multidistrict Litigation

        on transfer of this case to the multi-district litigation proceeding.

2.      A ruling on Plaintiffs' Motion to Remand (Doc. # 8) filed on September 7,

        2005, is WITHHELD pending a final decision from the Panel on Multidistrict

        Litigation on transfer of this case to the multi-district litigation proceeding.

DONE, this 5th day of December, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROSE M. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:05-cv-832-F |
| | ) | |
| PFIZER, INC., *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This cause is before the Court on Defendants' Motion for a Stay of All Proceedings
Pending Transfer to Multidistrict Litigation Proceeding (Doc. # 16) filed on September 26,
2005. The Court has considered the arguments in support of and in opposition to this motion.
It is hereby ORDERED as follows:

1.    Defendants' Motion for a Stay of All Proceedings Pending Transfer to
Multidistrict Litigation Proceeding (Doc. # 16) is GRANTED and this case is
STAYED pending a final decision from the Panel on Multidistrict Litigation
on transfer of this case to the multi-district litigation proceeding.

2.    A ruling on Plaintiffs' Motion to Remand (Doc. # 8) filed on September 7,
2005 is WITHHELD pending a final decision from the Panel on Multidistrict
Litigation on transfer of this case to the multi-district litigation proceeding.

DONE this 20th day of October, 2005.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KATIE THOMAS,          )
                       )
     Plaintiff,        )
                       )
v.                    )     CASE NO. 2:05-cv-824-F
                       )
PFIZER, INC., *et. al.*,    )
                       )
     Defendants.    )

## **ORDER**

This cause is before the Court on Defendants' Motion for a Stay of All Proceedings

Pending Transfer to Multidistrict Litigation Proceeding (Doc. # 14) filed on September 26,

2005. The Court has considered the arguments in support of and in opposition to this motion.

It is hereby ORDERED as follows:

1. Defendants' Motion for a Stay of All Proceedings Pending Transfer to Multidistrict

Litigation Proceeding (Doc. # 14) is GRANTED and this case is STAYED pending a final

decision from the Panel on Multidistrict Litigation on transfer of this case to the multi-district

litigation proceeding.

2. A ruling on Plaintiffs' Motion to Remand (Doc. # 7) filed on September 7, 2005

is WITHHELD pending a final decision from the Panel on Multidistrict Litigation on transfer

of this case to the multi-district litigation proceeding.

DONE this 15th day of November, 2005.

                           /s/ Mark E. Fuller
                    CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONALD L. MCGRADY,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )      Case No.: 2:06-cv-431-MEF
                                  )
PFIZER, INC., *et. al.*,          )
                                  )
        Defendants.               )

## ORDER

This cause is before the Court on Defendants' Motion for a Stay of All Proceedings

Pending Transfer to Multidistrict Litigation Proceeding (Doc. # 5) filed on May 22, 2006.

The Court has considered the arguments in support of and in opposition to this motion. It is

hereby ORDERED that the motion is GRANTED and this case is STAYED pending a final

decision from the Panel on Multidistrict Litigation on transfer of this case to the multi-district

litigation proceeding.

DONE this 23rd day of May, 2006.

                        _____
                              /s/ Mark E. Fuller
                        CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM RANDOLPH HALL, SR.,  )
As the Administrator of the Estate of  )
WILLIAM RANDOLPH HALL, JR.,  )
                         )
     Plaintiff,  )
                         )
v.  )     CASE NO. 2:05-cv-941-F
                         )
PFIZER, INC., *et. al.*,  )
                         )
     Defendants.  )

## ORDER

This cause is before the Court on Defendants' Motion for a Stay of All Proceedings

Pending Transfer to Multidistrict Litigation Proceeding (Doc. # 9) filed on 21 October 2005.

The Court has considered the arguments in support of and in opposition to this motion. It is

hereby ORDERED as follows:

1.     Defendants' Motion for a Stay of All Proceedings Pending Transfer to

    Multidistrict Litigation Proceeding (Doc. # 9) is GRANTED. This cause is

    STAYED pending MDL transfer to *In re Bextra and Celebrex Marketing,*

    *Sales Practices and Products Liability Litigation, MDL-1699.*

2.     A ruling on Plaintiffs' Motion to Remand (Doc. # 7) filed on 7 October 2005

    is WITHHELD pending a final decision from the Panel on Multidistrict

    Litigation on transfer of this case to the multi-district litigation proceeding.

3.     Defendant's Motion for Leave to File Reply (Doc. # 12) is DENIED as

MOOT.

DONE this 21ST day of November, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANN BEVERLY, etc.,                     :

     Plaintiff,                       :

                                    :

vs.                                    :     CIVIL ACTION 05-0542-M

PFIZER INC., et al.,                   :

     Defendants.                      :

<u>ORDER</u>

    The Court heard from counsel this date by telephone on the Notice of Parties' Planning Meeting (Doc. 15) and the status of this action.  It appears that this action will be transferred as a tag-along action to the Northern District of California within the next several days, to become a part of MDL-1699*, In re Bextra and Cellebrex Marketing, Sales, Practices and Products Liability Litigation.*  Therefore, Defendants' Motion for a Stay of All Proceedings Pending Transfer to Multidistrict Litigation Proceeding (Doc. 7) is **GRANTED**.

    Plaintiff's Motion for Expedited, Emergency Ruling (Doc. 10) is **MOOT**.  Plaintiff's Emergency Motion to Remand and Motion for Sanctions (Doc. 9), with supporting brief (Doc. 11), and Defendants' Reply Brief (Doc. 13) will be considered if and when this action is remanded to this District.

    The fictitious parties set out in the complaint are

hereby **STRICKEN** since fictitious party pleading is not generally recognized under the Federal Rules of Civil Procedure.  See e.g., Fed.R.Civ.P. 10(a); 28 U.S.C. § 1441(a); Rommell v. Automobile Racing Club of America, Inc., 964 F.2d 1090, 1098 n.14 (11th Cir. 1992); Weeks v. Benton, 649 F.Supp. 1297, 1298 (S.D. Ala. 1986).

Counsel for the parties are to ensure that all future filings contain the correct and proper names of the corporate Defendants as more fully set out in Defendants' Answer (Doc. 2).

DONE this 17th day of November, 2005.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

2